Pittsburgh *v.* Ruffner, Appellant.

Argued November 15, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and RHODES, JJ.

*O. R. Moyle,* with him *Samuel J. Feigus,* for appellant.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Crawford Scott,* for appellee.

OPINION BY KELLER, P. J., January 31, 1939:

The appellant in this case was arrested on February 14, 1938 on a warrant issued by Alderman Maloney, of the City of Pittsburgh, charged with violating the ordinance of that city approved January 8, 1921, known as Ordinance No. 2, Series 1921, recorded in Ordinance Book Vol. 32, p. 128, (amending ordinance approved December 4, 1886, as already amended). This ordinance provides that for the protection of the public and to guard against fraud and imposition, no person shall engage in the business of hawking, peddling or selling merchandise of any kind within the limits of the City of Pittsburgh, without having taken out a license therefor to sell or offer to sell such articles, and that all persons making sales or soliciting orders for the sale of goods or merchandise from house to house or in buildings within the limits of the City of Pittsburgh shall be required to register with the Bureau of Police and secure a permit from the Superintendent of Police; and subjects persons selling 'or offering to sell or soliciting orders from house to house for such goods or merchandise, without first having obtained such permit, to a fine of $50, in a proceeding for summary conviction, and in default of payment thereof to imprisonment for a period not exceeding thirty days.

A hearing was had before the alderman on February 15, 1938, at the close of which the alderman found the defendant guilty and sentenced him to pay a fine of $50 and costs, and in default of payment thereof, to be committed to the Allegheny County Jail for thirty days.

On February 21, 1938 defendant presented a petition

to the County Court of Allegheny County praying for the allowance of an appeal, which was allowed, bond to be filed in the sum of $100—which was done—and hearing fixed for March 18, 1938.

The hearing was duly had before Judge SOFFEL of the county court on March 18. Witnesses were sworn whose testimony established that the defendant on February 14, 1938 solicited George H. Dennison, manager of the Better Business Bureau, in his office in the Oliver Building in the City of Pittsburgh, to buy certain books and pamphlets purporting to be issued by an organization known as Jehovah's Witnesses, and sold him three pamphlets at five cents each and two books at twenty-five cents each, for which he gave defendant a one dollar bill and received thirty-five cents in change; and that said defendant had not registered with the Bureau of Police nor applied for or received a permit or license from the Superintendent of Police authorizing him to sell or solicit orders for such goods or merchandise.

The defendant offered in evidence a printed notice,— 'To whom it may Concern'—*signed only by himself,* certifying that he was an ordained minister and one of Jehovah's Witnesses sent out by Watch Tower Bible and Tract Society to call upon people at their homes and exhibit to them the message of the gospel in printed form; and moved to dismiss the action, inter alia, because "the ordinance is invalid as applied to the acts of the defendant in that it violates the clause of the Constitution of the Commonwealth of Pennsylvania providing for religious freedom and freedom of worship, and also the Fourteenth Amendment of the Constitution of the United States."

At the close of the hearing Judge SOFFEL found that defendant had made a sale of the books and pamphlets to Dennison and entered the following judgment:

"And now, to wit, March 18, 1938, after hearing, the Defendant herein is adjudged Guilty of the Offense of

Violating City of Pittsburgh Ordinance approved December 4, 1886 and the amendments thereto wherewith he stands charged and he is sentenced to pay a Fine of $50 and the costs, and in default thereof to stand committed to the Allegheny County Jail for the period of thirty (30) days in accordance with the laws of the Commonwealth of Pennsylvania and the Ordinance of the City of Pittsburgh relating thereto. Defendant to be credited on this sentence with any monies heretofore paid, or time heretofore served, on the sentence imposed by the Magistrate."

This was a final and definitive judgment from which an appeal lay to this Court, under the Act of March 2, 1923, P. L. 3, and April 30, 1931, P. L. 73, the latter being an amendment of the County Court Act of May 5, 1911, P. L. 198, which in section 6, clause (c), conferred exclusive jurisdiction on the county court in all cases of appeals from summary convictions in Allegheny County. See 17 PS sec. 626.

Where appeals have been allowed from summary convictions pursuant to Art. V, sec. 14 of our Constitution —see Act of April 17, 1876, P. L. 29, as amended by Acts of July 11, 1917, P. L. 771 and April 1, 1925, P. L. 98—, the judgment entered by the judge of the court of quarter sessions, or judge of the county court, hearing the appeal de novo without a jury, is the final judgment from which an appeal must be taken within the time fixed by law, to wit, forty-five days for appeals from the quarter sessions (Act of May 11, 1927, P. L. 972) and three months from the county court (in accordance with appeals from the common pleas, Act of April 30, 1931, P. L. 73). See *Com. v. Preston*, 92 Pa. Superior Ct. 159; *Com. v. Benson*, 94 Pa. Superior Ct. 10; *Com. v. Ahlgrim*, 98 Pa. Superior Ct. 595; *Com. v. Bertolette*, 101 Pa. Superior Ct. 334; *Com. v. Devenney*, 103 Pa. Superior Ct. 83, 156 A. 809; *Com. v. Cohen*, 103 Pa. Superior Ct. 496, 157 A. 216; *City of Scranton v. Noll*, 108 Pa. Superior Ct. 94, 164 A. 850; *Com. v.*

*Wanamaker*, 128 Pa. Superior Ct. 528, 194 A. 681; *Com. v. Long*, 276 Pa. 154, 120 A. 125. It has never been the practice to have such judgment reviewed by the court in banc before taking an appeal, as in the ordinary trial of civil issues.

Notwithstanding this, the defendant, on March 21, 1938, moved the court to open the judgment and for judgment of 'not guilty' on the whole record or for a new trial. No rule staying or suspending the judgment of March 18, 1938 was entered or allowed, pending the consideration of the motion, which after continuance of a month and twelve days and oral argument was refused on June 28, 1938. On July 14, 1938 defendant appealed to this court.

The three months' limitation for taking an appeal from the judgment of March 18, 1938 expired on June 18, 1938 and the appeal was, in consequence, too late and will be quashed. See *Bobbitt's Est.*, 131 Pa. Superior Ct. 386, 200 A. 279, where the subject was fully considered; *Mayer v. Brimmer*, 15 Pa. Superior Ct. 451; *Estate of Rachel Core*, 113 Pa. Superior Ct. 388, 174 A. 9. As the statute is mandatory, that "no appeal shall be allowed in any case" unless taken within the time fixed from the entry of the judgment, its provisions are binding whether the other side moves to quash or not; and the cases cited by appellant in his supplemental brief are all distinguishable on their facts, when read and understood. The procedure on an appeal from a summary conviction bears no likeness to that prescribed for the trial of civil cases without a jury, by agreement under the Act of April 22, 1874, P. L. 109.

Because of the insistence of appellant's counsel we have, however, considered the merits of the case and are of opinion that the court below rightly held that the ordinance in question does not violate either section 3 or section 7 of Article I of our State Constitution[1] or

---

[1] Art. I of Constitution of Pennsylvania:

"Sec. 3. *Rights of Conscience. Freedom of Religious Wor-*

section 1 of the 14th amendment of our Federal Constitution[2]; that is, that it does not unlawfully infringe upon the appellant's constitutional right of freedom of religious worship or the freedom of the press.

The discriminating opinion of Judge SOFFEL fully sustains her judgment, and the appeal might well be dismissed upon it without further elaboration; but, although perhaps supererogatory, we will supplement it by some additional matters not contained in her opinion.

## I.

The ordinance in question cannot, by any stretch of the imagination, be held to be directed against freedom of worship. It is concerned with hawking and peddling merchandise, and with selling merchandise from house to house and in buildings. It does not discriminate

---

ship. All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience and no preference shall ever be given by law to any religious establishments or modes of worship." ......

"Sec. 7. *Freedom of the Press.* The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right hereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

[2] 14th Amendment to Federal Constitution:

"Sec. 1. *Citizenship Defined. Privileges of Citizens.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

against non-residents, nor is it limited to any particular kind of merchandise; it is not a revenue measure. It is a police measure intended to protect householders and occupants of buildings from entrance into their homes and offices by persons unable to show a good reputation for honesty and integrity, who, under the guise of selling goods and merchandise, may use such entrance for ulterior and improper purposes. The fact that the caller may be an ordained minister is not decisive of the question. See *Com. v. Gregory,* 132 Pa. Superior Ct. 507, 1 A. 2d 501, (appeal refused by Supreme Court, December 21, 1938). This appellant is perfectly free to worship God according to the dictates of his own conscience, separately or with his family and co-religionists, in his home or theirs, and in church, chapel, assembly or other gathering place. But the very clause of the Constitution which protects him in his religious worship, protects others from having his religious tenets and beliefs thrust upon them, against their will, in their homes and offices. Furthermore, the constitutional guaranty of freedom of religious worship furnishes no ground for striking down a reasonable and salutary ordinance designed to protect people in their homes and offices from being victimized by unscrupulous and unauthorized agents. In fact, this ordinance protects duly authorized agents of the organization alleged to be sponsoring this appellant from the acts of unauthorized and unscrupulous persons who may falsely pretend to be its representatives. The constitutional right of freedom of worship does not guarantee anybody the right to *sell* anything from house to house or in buildings, belonging to, or in the occupancy of, other persons.

## II.

Nor does the ordinance unlawfully infringe upon the constitutional right of freedom of the press. This appellant may, notwithstanding this ordinance, freely print and communicate his thoughts and opinions and

may freely speak, write and print on any subject, "being responsible for the abuse of that liberty", and he may, subject to reasonable regulation, freely distribute the same; but that furnishes no warrant for upholding his *unlimited and unrestricted* right to enter the homes and offices of others to *sell* to them the books and pamphlets he may have written or books and pamphlets expressive of his thoughts and opinions. The case of *Lovell v. Griffin,* 303 U. S. 444, on which appellant relies, declares no such doctrine.

The ordinance held invalid in that case forbade *every kind of distribution,* either by hand or otherwise, of circulars, handbooks, advertising or literature of any kind, whether said articles were being delivered free or were being sold, within the limits of the City of Griffin, without first obtaining written permission from the City Manager of that city. As pointed out by Chief Justice HUGHES (p. 451) : "It covers every sort of circulation 'either by hand or otherwise'. There is thus no restriction in its application with respect to time or place. *It is not limited to ways which might be regarded as inconsistent with the maintenance of public order or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets.* The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the City Manager." (Italics supplied).

The present ordinance relates only to the hawking and peddling of merchandise and the *selling* of goods and merchandise from house to house, or in buildings within the City limits. Its purpose is reasonable and salutary—the protection of the public against fraud and imposition. That books and pamphlets may be merchandise cannot be doubted; and that venders of books and printed material may be unworthy and unscrupulous and may deceive and defraud the public is too well known to need extensive reference. We have

had in this court a number of cases where advantage was taken of householders and business men by unscrupulous book agents. The latest case which comes to our recollection is *Ashland Towson Corp. v. Kasunic,* 110 Pa. Superior Ct. 496, 168 A. 502. And the case of *Federal Trade Commission v. Standard Education Society,* 302 U. S. 112, decided in 1937, is proof positive that the selling of books by agents is not wholly free from deceitful practices.

The regulation of such agents and solicitors by the ordinance in question is not unreasonable nor arbitrary. It requires persons making sales of goods or merchandise or offering the same for sale from house to house or in buildings within the city limits, "to register with the Bureau of Police stating the kind or character of goods or merchandise they are selling, their names, occupation, residence and reference as to their character for honesty and integrity, as well as reference to the person, firm or corporation for whom they are selling said goods and which is to supply the goods and material sold. Such registration shall be in the form of an application to said Bureau for a permit to act as such agent or solicitor, and if the Superintendent of Police shall, upon examination without delay, find the statements and reference verified, he shall forthwith issue said permit to applicant. In case said statements and reference are not verified, permits shall be refused." Arbitrary and unreasonable refusal by the Superintendent of Police to issue such a permit can be corrected.

The fact that the books and merchandise being sold may be religious in tone and content does not exempt the person who sells them from compliance with the ordinance. Even such a business may be conducted improperly. The evidence in this case tends to show that this very appellant had so conducted himself as to be objectionable to tenants of the building. The ordinance is general and covers the sale of books and printed matter no less than other merchandise. Despite the

earnest arguments of appellant's counsel we are not convinced that freedom of the press carries with it freedom from all regulation of sales of printed matter; we do not accede to his contention on the oral argument that the federal decisions relied upon by him go so far as to rule that the constitutional guaranty of a free press forbids dealers in books and printed matter being subjected to our State mercantile license tax or the federal income tax as to such sales, along with dealers in other merchandise.

In our opinion the ordinance in question violated none of the appellant's constitutional rights, and was a reasonable exercise by the City of the police powers conferred upon it by the Act of June 10, 1881, P. L. 109, sec. 1, 53 PS sec. 2491.

The appeal is quashed.