Commonwealth *v.* Murdock et al., Appellants.

176

Submitted April 23, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Theodore A. Epstein, Harry M. McCaughey* and *Hayden C. Covington,* for appellants.

*Fred B. Trescher,* for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

These eight appeals were taken from orders of the Court of Quarter Sessions of Westmoreland County refusing to allow appeals from judgments and sentences imposed by the mayor of the City of Jeannette on summary convictions for violations of ordinance No. 60 of said city, duly enacted March 21, 1898. This ordinance

forbids the sale of goods, wares, and merchandise of any kind within said city, by canvassing or soliciting, unless the person so canvassing or soliciting has first procured a license to transact said business, and paid the license fee required.[1]

The Constitution of Pennsylvania (Art. V, sec. 14) provides for an appeal in cases of summary conviction "to such court of record as may be prescribed by law, *upon allowance of the appellate court or judge thereof upon cause shown*". (Italics ours). In carrying this provision of the Constitution into effect, the General Assembly passed the Act of April 17, 1876, P. L. 29, which authorized appeals from summary convictions to the *court of quarter sessions* of the county in which the magistrate, etc., resided, within five days, *upon allowance by said court or any judge thereof, upon cause shown.*

Under our law, therefore, an appeal does not lie from a judgment on summary conviction, as of course. The appellant must first show cause for the appeal to a judge of the court of quarter sessions [2] and secure his *allowance* of the appeal.

These appellants were arrested on complaints charging them with having violated said ordinance in unlawfully soliciting the sale of, and in selling, certain books and pamphlets, from door to door, in the City of Jeannette, without obtaining a license, as provided in said ordinance. A hearing was had before the mayor of the city and notes of the testimony at the hearing were taken in shorthand and transcribed. They form part of the record considered by the court below and sent up on appeal.

The testimony establishes that all of the defendants—

---

[1] For one day, $1.50; for one week, $7; for two weeks, $12; for three weeks, $20.

[2] In Allegheny County, of the County Court. Act of May 5, 1911, P. L. 198, sec. 6(c).

these appellants—went about from door to door in the City of Jeannette soliciting people in their homes, etc. to purchase, and selling, two books entitled 'Salvation' and 'Creation' respectively, and certain leaflets or pamphlets, all published by the Watch Tower Bible and Tract Society of Brooklyn, N. Y., for which the society fixed twenty-five cents each as the price for the books and five cents each as the price of the leaflets. Defendants paid twenty cents each for the books, unless they devoted their whole time to the work, in which case they paid five cents each for the books they sold at twenty-five cents. Some of the witnesses spoke of 'contributions' but the evidence justified a finding that they *sold* the books and pamphlets. As a preliminary to the sale, they brought with them a phonograph—which they purchased from the Watch Tower Bible and Tract Society—on which they played a record, purchased from the same society, in which every other religion but their own was denounced as a 'snare and a racket'. The testimony of the defendants themselves warranted a finding that they had sold these books and pamphlets for money and that they had not applied for or procured a license to do so as provided by ordinance No. 60. Their defense was that they were members of a sect, calling themselves 'Jehovah's Witnesses', and that it was against their religious convictions to apply for such a license, and that any prosecution against them for violating the provisions of the ordinance requiring such a license was an infringement of their rights under the Constitution of the United States and the Constitution of Pennsylvania, and a restriction of the rights of freedom of worship, freedom of speech, and freedom of the press, secured to them by said Constitutions, and in direct violation of the 14th Amendment to the Constitution of the United States.

After a full hearing, covering eighty printed pages of testimony, the Mayor found all of the defendants guilty and imposed upon each of them a fine within the

limit fixed by the ordinance, in default of payment of which they would be committed to the county prison.

Within five days they applied by petition to the court of quarter sessions for an appeal, which was refused by Judge GORDON, President Judge of Common Pleas No. 2 of Philadelphia County, specially presiding, his reasons therefor being set forth as follows: "The appeal in this case was based upon the alleged unconstitutionality of an ordinance of the City of Jeannette requiring the licensing of peddlers and street vendors. The validity of the same ordinance under the Constitution of the United States was involved in the case of *Stewart v. Commonwealth of Pennsylvania (City of Jeannette),* 309 U. S. 674, [petition for certiorari from the judgment of the Superior Court of Pennsylvania in *Com. v. Stewart et al.,* 137 Pa. Superior Ct. 445, 9 A. 2d 179. Appeal refused by Supreme Court of Pennsylvania, December 8, 1939, 137 Pa. Superior Ct. XXXIII], in which the Supreme Court of the United States refused an appeal on March 25, 1940. The constitutionality of a similar ordinance under our State Constitution was also decided by the Superior Court in the case of *Pittsburgh v. Ruffner,* 134 Pa. Superior Ct. 192, [4 A. 2d 224]. The questions sought to be raised by the appellants here are, therefore, no longer disputable, and it was for this reason that we refused the appeal."

The case of *Pittsburgh v. Ruffner,* 134 Pa. Superior Ct. 192, 4 A. 2d 224—appeal refused by the Supreme Court of Pennsylvania on March 17, 1939, 134 Pa. Superior Ct. XXXIII—was concerned with a somewhat similar ordinance of the City of Pittsburgh, in which the same constitutional defense was presented as in this case. On the argument of that case it developed that the appeal had not been taken within the time limited for appeals by our statute on the subject, and would have to be quashed. But counsel for the appellant— who was also a member of the Jehovah's Witnesses sect —was so insistent in asking a decision on the merits,

in order that it might govern the disposition of similar cases, that we complied with his request and fully discussed the case on its merits and ruled that such an ordinance, if nondiscriminatory and not unreasonable, was not in violation of the constitutional rights of freedom of worship and freedom of the press secured by our State Constitution and by the Federal Constitution as enlarged by the 14th Amendment.

We said, inter alia:

"I. The ordinance in question cannot, by any stretch of the imagination, be held to be directed against freedom of worship. It is concerned with hawking and peddling merchandise, and with selling merchandise from house to house and in buildings. It does not discriminate against non-residents, nor is it limited to any particular kind of merchandise; ...... This appellant is perfectly free to worship God according to the dictates of his own conscience, separately or with his family and co-religionists, in his home or theirs, and in church, chapel, assembly or other gathering place ...... The constitutional right of freedom of worship does not guarantee anybody the right to *sell* anything from house to house or in buildings, belonging to, or in the occupancy of, other persons.

"II. Nor does the ordinance unlawfully infringe upon the constitutional right of freedom of the press. This appellant may, notwithstanding this ordinance, freely print and communicate his thoughts and opinions and may *freely speak,* write and print on any subject, 'being responsible for the abuse of that liberty', and he may, subject to reasonable regulation, freely distribute the same; but that furnishes no warrant for upholding his *unlimited and unrestricted* right to enter the homes and offices of others to *sell* to them the books and pamphlets he may have written or books and pamphlets expressive of his thoughts and opinions. The case of *Lovell v. Griffin,* 303 U. S. 444, on which appellant relies, declares no such doctrine ......

"The present ordinance relates only to the hawking and peddling of merchandise and the *selling* of goods and merchandise from house to house, or in buildings within the City limits ........ The ordinance is general and covers the sale of books and printed matter no less than other merchandise. Despite the earnest arguments of appellant's counsel we are not convinced that freedom of the press carries with it freedom from all regulation of sales of printed matter; we do not accede to his contention on the oral argument that the federal decisions relied upon by him go so far as to rule that the constitutional guaranty of a free press forbids dealers in books and printed matter being subjected to our State merchantile license tax or the federal income tax as to such sales, along with dealers in other merchandise."

We have several times since approved the legal propositions enunciated in that case.[3]

Later, in *Com. v. Reid,* 144 Pa. Superior Ct. 569, 575, 20 A. 2d 841, we distinguished that case from *Pittsburgh v. Ruffner,* supra, and refused to uphold an ordinance of the Borough of Clearfield, when it was sought to be used to prevent members of Jehovah's Witnesses from selling on the streets of the borough certain weekly publications of the Watch Tower Bible and Tract Society, known as 'The Watch Tower' and 'Consolation', publications somewhat along the lines of the Salvation Army's 'War Cry'.

Since the submission of the present case to this court, the Supreme Court of the United States has decided three cases, dealing with the same questions involved in the present appeals, to wit, *Jones v. City of Opelika Bowden et al. v. City of Fort Smith;* and *John v.*

---

[3] See *Com. v. Stewart,* 137 Pa. Superior Ct. 445, 446, 9 A. 2d 179; *Com. v. Palms,* 141 Pa. Superior Ct. 430, 440, 15 A. 2d 481; *Com. v. Hessler,* 141 Pa. Superior Ct. 421, 15 A. 2d 486; *Com. v. Reid,* 144 Pa. Superior Ct. 569, 575-6, 20 A. 2d 841.

State of Arizona, reported in 316 U. S. 584, 62 S. C. Rep. 908.

The facts in the cases of *Bowden et al. v. City of Fort Smith* and *Jobin v. State of Arizona* are so similar to those in the appeals before us, and the discussion of Mr. Justice REED in holding that similar ordinances of the City of Fort Smith, Arkansas, and City of Casa Grande, Arizona, were not violative of the rights— whether of freedom of worship, freedom of speech, or freedom of the press—of the sectarians calling themselves 'Jehovah's Witnesses', is so appropriate to our cases, that we need do little more than cite it as determinative of the federal constitutional questions raised by the appellants. Mr. Justice REED said, inter alia, "There is to be noted, too, a distinction between non-discriminatory regulation of operations which are incidental to the exercise of religion or the freedom of speech or the press and those which are imposed upon the religious rite itself or the unmixed dissemination of information. Casual reflection verifies the suggestion that both teachers and preachers need to receive support for themselves as well as alms and benefactions for charity and the spread of knowledge. But when, as in these cases, the practitioners of these noble callings choose to utilize the vending of their religious books and tracts as a source of funds, the financial aspects of their transactions need not be wholly disregarded. To subject any religious or didactic group to a reasonable fee for their moneymaking activities does not require a finding that the licensed acts are purely commercial. A book agent cannot escape a license requirement by a plea that it is a tax on knowledge. It would hardly be contended that the publication of newspapers is not subject to the usual government fiscal exactions, *Giragi v. Moore,* 301 U. S. 670; 48 Ariz. 33, 49 Ariz. 74, or the obligations placed by statutes on other business. *Associated Press v. Labor Board,* 301

U. S. 103, 130 ......  When proponents of religious or social theories use the ordinary commercial methods of sales of articles to raise propaganda funds, it is a natural and proper exercise of the power of the state to charge reasonable fees for the privilege of canvassing. Careful as we may and should be to protect the freedoms safeguarded by the Bill of Rights, it is difficult to see in such enactments a shadow of prohibition of the exercise of religion or of abridgment of the freedom of speech or the press. It is prohibition and unjustifiable abridgment which is interdicted, not taxation. Nor do we believe it can be fairly said that because such proper charges may be expanded into unjustifiable abridgments they are therefore invalid on their face. The freedoms claimed by those seeking relief here are guaranteed against abridgment by the Fourteenth Amendment. Its commands protect their rights. The legislative power of municipalities must yield when abridgment is shown. Compare *Grosjean v. American Press Co.,* 297 U. S. 233, with *Giragi v. Moore,* 301 U. S. 670. If we were to assume, as is here argued, that the licensed activities involve religious rites, a different question would be presented. These are not taxes on free will offerings. But it is because we view these sales as partaking more of commercial than religious or educational transactions that we find the ordinances, as here presented, valid ......  In the ordinance of Casa Grande and Fort Smith, we have no discretionary power in the public authorities to refuse a license to any one desirous of selling religious literature. No censorship of the material which enters into the books or papers is authorized. No religious symbolism is involved such as was urged against the flag salute in *Minersville District v. Gobitis,* 310 U. S. 586. For us there is no occasion to apply here the principles taught by that opinion. Nothing more is asked from one group than from another which uses similar methods of propagation. We see nothing in the collection of a nondiscrimi-

184

natory license fee, uncontested in amount, from those selling books or papers, which abridges the freedoms of worship, speech or press. Cf. *Grosjean v. American Press Co.*, 297 U. S. 233, 250. As to the claim that even small license charges, if valid, will impose upon the itinerant colporteur a crushing aggregate, it is plain that if each single fee is, as we assume, commensurate with the activities licensed, then though the accumulation of fees from city to city may in time bulk large, he will have enjoyed a correlatively enlarged field of distribution. Cf. *Coverdale v. Pipe Line Co.*, 303 U. S. 604, 612-613. The First Amendment does not require a subsidy in the form of fiscal exemption. *Giragi v. Moore,* supra. Accordingly the challenge to the Fort Smith and Casa Grande ordinances fails."

We think it proper to point out, however, that the ordinance here involved is forty-four years old. It was enacted long before co-religionists of these appellants assumed the name, 'Jehovah's Witnesses', or announced their refusal to obey secular laws. It is nondiscriminatory and there is no averment that it is oppressive. It has not been enforced so as to prevent appellants from freely selling, without license, their pamphlets and weekly publications on the streets, (see *Com. v. Reid,* supra), but only as respects canvassing, soliciting and sales from door to door and house to house. It is within the express grant of municipal power and authority contained in the Third Class City Act of June 23, 1931, P. L. 932, Art. XXVI, sec. 2601, and its amendments, 53 PS §12198-2601, and the prior acts regulating third class cities and boroughs.

The orders are severally affirmed, and it is ordered that the appellants appear in the court below at such time as may be fixed by that court and that they be severally committed until they have complied with their respective sentences or so much thereof as have not been performed.