## Commonwealth *v.* Homer et al., Appellants.

434

Argued October 11, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Roy A. Swayze,* with him *Conrad A. Falvello* and *Hayden C. Covington,* for appellants.

*Max Rosenn,* Assistant District Attorney, with him *Leon Schwartz,* District Attorney, for appellee.

OPINION BY KELLER, P. J., October 29, 1943:

These appeals are ruled by the recent decision of the Supreme Court of the United States in *Murdock v. Pennsylvania (City of Jeannette),* 319 U. S. 105, (filed May 3, 1943) and by its last decision in *Jones v. Opelika, Bowden v. Fort Smith,* and *Jobin v. Arizona,* 319 U. S. 103, (filed on the same date) which overruled its first decision in those cases, reported in 316 U. S. 584, et seq.

It is but fair to the judge, who heard and decided the case in the court below, to state that his judgment was entered on November 20, 1942, when the first decision of the Supreme Court of the United States in the *Opelika et al.* cases was still the law of the land, and our decision in *Com. v. Murdock et al.,* 149 Pa. Superior Ct. 175, 27 A. 2d 666,[1] which followed the *Bowden* and *Jobin* cases, had not been reversed.

---

[1] Allocatur refused by the Supreme Court of Pennsylvania (149 Pa. Superior Ct. XXIII).

The case came before the lower court on appeal by these appellants from sentences imposed by an alderman on conviction in summary proceedings for violation of an ordinance of the City of Nanticoke, adopted May 4, 1926, which imposed an annual license tax of $25, or a monthly license tax of $2.50 [2] on hawkers, hucksters, venders or peddlers "(except disabled soldiers, farmers and manufacturers disposing of their own products) of souvenirs, badges, toys, stationery, fruit, produce or any other small articles of merchandise not herein enumerated, within the limits of the City of Nanticoke".

The testimony was not taken down and transcribed either before the magistrate or before the judge of the court of quarter sessions who heard the case on appeal; but the transcript of the alderman's docket, which is a part of the record on appeal—in connection with the opinion of the judge of the court below—shows that the alleged violation of the city ordinance consisted in the sale and distribution by the defendants, who were members of the sect known as Jehovah's Witnesses, of books, tracts and literature issued or published by Watch Tower Bible and Tract Society, in connection with efforts to propagate their religious beliefs.

We are of opinion that these facts bring the case within the broad and sweeping rulings of the Supreme Court of the United States in the majority opinions filed in the cases above cited.

Counsel for appellee endeavors to distinguish this case from those decisions by the fact that these appellants *sold* the books, tracts and publications, and, hence, that their activities were commercial rather than religious. But the testimony in the *Murdock et al.* cases shows that the defendants there "went about from

[2] "Provided, however, that no *daily* license shall be issued under this section for a less sum than $2.50 per day" (sec. 26 of ordinance.)

door to door in the City of Jeannette soliciting people in their homes to purchase, and selling, two books entitled 'Salvation' and 'Creation' respectively, and certain leaflets or pamphlets", all published by the Watch Tower Bible and Tract Society of Brooklyn, N. Y. which had fixed twenty-five cents each as the price of the books, and five cents each as the price of the leaflets, and that those of the defendants who devoted their whole time to the work made a profit of 400 per cent on the sale of the books. See 149 Pa. Superior Ct. pp. 177-8. And the dissenting opinion of Mr. Justice REED in *Murdock v. Pennsylvania*, 319 U. S. on page 119, made it clear that "the transaction had been found by the state courts to be a *sale* under their ordinances". The discussion by Mr. Justice JACKSON in his dissenting opinion in *Douglas v. Jeannette*, 319 U. S. 157 (see pp. 167-173), which was expressly made "applicable also to Nos. 480-487, *Murdock v. Pennsylvania*, ante p. 105" and related to the same city ordinance involved in those appeals, demonstrated that the campaign of the Jehovah's Witnesses therein appealing was a selling one as well as a scurrilous attack on the religious beliefs of the invaded householders, but the five members of the Supreme Court, who constituted the majority, gave little weight to these matters in their decision holding that the ordinance in question violated the rights of religious liberty and freedom of speech secured to the appellants by the first amendment to the Federal Constitution, as extended by the fourteenth amendment.

Counsel for appellee also contended that the ordinance in the present cases is distinguished from the ordinance involved in the appeals heard by the Supreme Court of the United States because of the smallness of the license fee required, to wit, $25 a year, although the fee for a single day, $2.50, was a dollar more than the license fee for a day, fixed in the ordinance involved in the *Murdock et al.* cases (149 Pa. Superior Ct. p. 177).

But the cases were not decided by the Supreme Court on the ground that the license fee fixed by the Jeannette ordinance was oppressive, for no such contention had ever been raised below—before the justice of the peace, in the court of quarter sessions, or in this court; see 149 Pa. Superior Ct. p. 184, where we said: "We think it proper to point out, however, that the ordinance here involved is forty-four years old. It was enacted long before coreligionists of these appellants assumed the name, 'Jehovah's Witnesses', or announced their refusal to obey secular laws. It is nondiscriminatory *and there is no averment that it is oppressive*. It has not been enforced so as to prevent appellants from freely selling, without license, their pamphlets and weekly publications on the streets, (see *Com. v. Reid,* supra [144 Pa. Superior Ct. 569, 20 A. 2d 841]), but only as respects canvassing, soliciting and sales from door to door and house to house". And, of course, the Supreme Court of the United States would not reverse a state court on a ground not raised in that court.

We are of opinion that there is no valid legal ground of distinction as respects these appeals that would justify us in disregarding the clear mandate of the Supreme Court in the cases above referred to, and in compliance with that mandate, as we understand it, we are constrained to sustain the appeals and reverse the judgments.

Judgments reversed.