**Application of Elizabeth Porter WY-CKOFF, for a Writ of Habeas Corpus.**

**Civ. A. No. 3140.**

United States District Court
S. D. Mississippi,
Jackson Division.

July 31, 1961.

William Kunstler of Kunstler & Kunstler, New York City, Jack H. Young, Jackson, Miss., for petitioner.

Joe T. Patterson, Atty. Gen., Dugas Shands, Edward L. Cates, Peter M. Stockett, Jr., Asst. Attys. Gen., J. A. Travis, Jr., Tom H. Watkins, E. W. Stennett, Robert G. Nichols, Jr., Jackson, Miss., for respondent.

MIZE, Chief Judge.

This matter is before the Court upon a petition of Elizabeth Porter Wyckoff for a writ of habeas corpus and upon the answer J. R. Gilfoy, as Sheriff of Hinds County, Mississippi. The petition for a writ of habeas corpus was filed with the Court and the Court issued a show cause order to the Sheriff of Hinds County why the writ should not issue and he responded thereto and the matter came on for hearing.

The petitioner alleged that she was a citizen of the United States, a resident

of the state of New York, and she alleged that she is now imprisoned and restrained of her liberty in the Hinds County Jail in the State of Mississippi in the custody of J. R. Gilfoy, Sheriff of Hinds County, Mississippi. She alleged that the cause of such imprisonment is not known to her, but that she is held as a county prisoner under the exclusive jurisdiction or custody of said Sheriff pursuant to a judgment of the Municipal Court of the City of Jackson, Hinds County, and that she was convicted of violating Sec. 2087.5 of the Mississippi Code of 1942 as amended, and by virtue of that conviction was committed to imprisonment in the Hinds County Jail for a period of four months and fined $200. She further alleged that the judgment, sentence and commitment were void and without authority of law, and that her imprisonment was a denial of due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States, and also in violation of the First and Fifteenth Amendments to the Constitution of the United States; that the Court rendering the judgment of conviction was without jurisdiction.

The Respondent, Gilfoy, answered the petition and set up as a defense thereof that he held the custody of the Petitioner by virtue of a judgment of conviction of breach of the peace in Hinds County, Mississippi and the commitment issued by the Ex Officio Justice of the Peace of that District, and denied all the other material allegations of the petition.

The Petitioner, who is a white woman, was convicted of a violation of Section 2087.5 of the Code of 1942 and the amendments thereto, after a fair trial in the Ex Officio Justice of the Peace Court of James L. Spencer. The Sheriff further set up as affirmative matter a certificate of the Ex Officio Justice of the Peace wherein he certified that the Petitioner was represented in his court by four attorneys of her own choice and that the Petitioner, along with counsel for the State, announced ready for trial. She was tried by the Court upon evidence and, after argument, was convicted by the Ex Officio Justice of the Peace, and Respondent also set up as a defense that the Petitioner had not exhausted her state remedies which were available to her and that there was no emergency existing in her behalf to justify the disregarding of the plain mandate of the Act of Congress, being Section 2254, Title 28 U.S.C.A.

Counsel for Petitioner urges that if the writ should be denied, the Court should retain jurisdiction until she has had an opportunity to avail herself of the remedies afforded by the laws of the State of Mississippi.

■■ The Court has considered the oral argument of the attorneys and their very able briefs filed in this case, and is of the opinion that the writ should be denied. In granting the writ the Court would be compelled to disregard and ignore the plain language of Section 2254 of Title 28 of the United States Code Annotated, which provides that a Federal Court shall not grant a writ of habeas corpus to one who is held under a commitment of the State Court unless the Petitioner has exhausted the state remedies. The Petitioner admits in her petition that she has not exhausted them, but urges the Court that the present petition is an emergency and that the Act of Congress should be disregarded by the Court. With this contention I cannot agree. There is no emergency to justify a disregard of the Act of Congress. Petitioner alleges that she is unable to pay the cost of exhausting her remedies. In Mississippi this is not an excuse or justification. The statutes of Mississippi provide that any person who is unable to pay the cost or give bond therefor may file a pauper's oath and the appeal will be perfected immediately without cost. Section 1203, Mississippi Code of 1942.

■ The Court which convicted the Petitioner is a State Court known as an Ex Officio Justice of the Peace. The law of Mississippi provides that the Police Justice of a city of over 10,000 shall also be Ex Officio Justice of the Peace, authorized to try all misdemeanors com-

mitted within the limits of the municipality. See Section 3374-103, Mississippi Code of 1942 and amendments thereto. The Petitioner was convicted June 5, 1961. Under Sections 1175, 1202 and 1203 of the Code of 1942 as recompiled, she had the right of appeal immediately to the County Court, where she would be entitled to a trial de novo by a jury, if she desired one and if convicted there would then be entitled to an immediate appeal to the Circuit Court, where the case would be tried on the record, and if affirmed there she would be entitled to an appeal to the Supreme Court of the State. These remedies are speedy and exhaustive, and even go further than in many states. The statutes give the trial court the right to release one without bond pending appeal, upon proper petition and showing that one is unable to give bond. Petitioner further contends that she was denied due process of law because she did not have a jury trial. This contention is without merit. When one is tried in a Justice of the Peace Court as was petitioner, he is entitled to trial by jury if he requests it, but the record shows that Petitioner went to trial represented by able counsel without calling for a jury.

Petitioner contends through her counsel that this is an effort to prevent integration and to enforce segregation. This contention is without merit. Petitioner was not convicted of a violation of any law with reference to integration or segregation but was convicted of a breach of the peace in refusing to disperse and move on under the direction of a lawful officer. The section of the Code above referred to provides that it is a misdemeanor to congregate with other persons or crowds with the intent to provoke a breach of the peace and to refuse to disperse or move on upon the order of a lawful officer. This statute, or one similar thereto, is common to many states in the Union and is a very wise exercise of police powers of the state. Petitioner's own state, New York, has a very similar statute and with the same purpose as has the Mississippi statute. See Section 722, New York Penal Law, McKinney's Consol.Laws, c. 40.

It is not necessary in the present hearing to determine the constitutionality of this statute or similar statutes throughout the nation for the reason that Congress has specifically forbidden the Federal Courts to grant a writ of habeas corpus unless a petitioner has exhausted all state remedies. That section of the Act of Congress reads as follows: "An applicant shall not [have been] deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." The Federal Courts as well as Congress are reluctant to interfere with the enforcement of the criminal statutes of a state, but leave that function to appropriate action of each state. The wisdom of this statute is exemplified by oral argument of counsel for petitioner when he refers to the bloodshed that occurred in Montgomery. No such occurrences happened in Mississippi, but had it not been for the orderly enforcement by the officers of the State of Mississippi under the provisions of this statute, such occurrences could have happened. By virtue of the power of this statute the officers are authorized to require assemblies which are likely to provoke a breach of the peace to move on, and if one refuses so to do, he may be arrested for violation of the statute.

Counsel for Petitioner, upon his request for the Court to retain jurisdiction even though the writ is denied, cites the case of Duffy v. Wells, 9 Cir., 201 F. 2d 503. Under this authority I agree that this case is an appropriate one for the Court to retain jurisdiction, but deny the writ. As heretofore stated, the Federal Courts are very reluctant indeed to interfere with the ordinary process of a State Court involving state matters. See Davis v. Burke, 179 U.S. 399, 21 S. Ct. 210, 45 L.Ed. 249; Ex Parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Stack v. Boyle, 342 U.S. 1, 72 S.Ct.

1, 96 L.Ed. 3; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469

█ The petition now before the Court for a writ of habeas corpus was heard upon the record without any evidence being introduced by either side. When the case was called by the Court counsel for Petitioner and counsel for the defendant were asked if either side desired to introduce any evidence and each answered that they did not. As heretofore stated, the law is that when a petition for habeas corpus is answered and the allegations of the petition are denied, the burden is upon the Petitioner to prove the allegations of the petition and her right thereunder.

As argued by counsel for Petitioner, the decision in this case will probably be far-reaching and one of importance. However, the question really is not a new one. It many times has been passed upon by the Courts. A review of the authorities will be appropriate as well as instructive, and I shall therefore discuss some aspects of habeas corpus as they relate to the always delicate question of the relationship between the states and the Federal Government under our dual sovereignty.

It is generally known that the section with which we are now dealing (28 U.S. C.A. § 2254), and the entire Chapter 153 of which it is a part, came into our law under the 1948 recodification of the Judicial Code. The chapter was based to a considerable extent upon studies made by the Judicial Conference of Senior Circuit Judges through its committee on habeas corpus, of which Judge John J. Parker was Chairman. The Supreme Court quoted a portion of the report of that committee in its decision of Darr v. Burford, 1950, 339 U.S. 200, 212–214, 70 S.Ct. 587, 94 L.Ed. 761.

The chapter on Habeas Corpus is, therefore, an expression of the attitude of Congress on a subject which, both before and after its passage, was the subject of constant solicitude of the Supreme Court in dealing with Federal-State relationships.

The Fifth Circuit Court of Appeals has in a recent case collected and commented on some of these cases, and I quote a portion of its decision in Empire Pictures Distributing Co. v. City of Fort Worth, 273 F.2d 529, 535, et seq. (The notes, as numbered in the text of that decision, are shown in parentheses):

"Before leaving the discussion of the holdings of the five recent decisions it is desirable to point out that, in 1955,[13] (Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600) the Supreme Court had emphasized the importance of the change in language which the enactment of Title 28 U.S.Code in 1948 brought about. The statute which had theretofore been § 265 of the Judicial Code was revised in the 1948 enactment so as to read:[14] (28 U.S.C.A. § 2283).

"'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'

"Richman had brought a proceeding in a State court of Missouri to enjoin picketing by Amalgamated, alleging that it was being conducted in furtherance of a common-law conspiracy. Asserting that the field had been occupied by the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq. so that only the District Court of the United States had jurisdiction,[15] (28 U.S. C.A. § 1337 and cf. Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546.) Amalgamated filed action in the federal court to restrain the prosecution of the State court proceedings. The District Court dismissed, the Court of Appeals for the Sixth Circuit affirmed,[16] (211 F.2d 449.) and the Supreme Court approved their actions, holding that the quoted statute constituted 'Legislative policy * * * in a clear-cut prohibition qualified only by specifically defined exceptions.' (348 U.S. 511, 75 S. Ct. 455.) Responding to the argument that to permit State courts to entertain jurisdiction which had so manifestly been vested in the federal courts under

Taft-Hartley would bring about a situation where 'delay will not only undercut the legislative scheme, but opportunity for effective union activity may be diminished if not lost,' the Supreme Court said (348 U.S. at pages 518–519, 75 S.Ct. at page 456):

" 'The assumption upon which the argument proceeds is that federal rights will not be adequately protected in the state courts, and the "gap" .complained of is impatience with the appellate process if state courts go wrong. But during more than half of our history Congress, in establishing the jurisdiction of the lower federal courts, in the main relied on the adequacy of the state judicial systems to enforce federal rights, subject to review by this Court. With limited exceptions, it was not until 1875 that the lower federal courts were given general jurisdiction over federal questions. During that entire period, the vindication of federal rights depended upon the procedure which petitioner attacks as so grossly inadequate that it could not have been contemplated by Congress. The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between [the] state and federal courts. \* \* \*'

\* \* \* \* \* \*

"Finally, it is clear that the federal courts should defer to state courts, because of the long settled principle that a federal court will intervene in a state's enforcement of its criminal laws only in extreme cases. One or two Supreme Court decisions will suffice to show that the principle is deep-rooted in our jurisprudence.

"The two ordinances under attack here create misdemeanors only, punishable by maximum fines of $200.00 for each day's violation. The basic thrust of the Complaint is to procure a federal holding in appellants' favor to escape being subjected to being fined for showing the picture without first obtaining a permit. The action of the Supreme Court in Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, illustrates that such a course may not be followed.

"Jeannette had an ordinance requiring those who solicited within its borders to procure a license before beginning such solicitation. A group of Jehovah's Witnesses refused to observe the requirements of the ordinance, being convinced that it was inconsistent with the teachings of their religion. When the city officials asked that they refrain from approaching the residents of the city, they decided upon a mass infiltration and brought one hundred Witnesses into the city to solicit in defiance of the ordinance. It was necessary to call out the fire department to supplement the efforts of the small police force. A score of the Witnesses were arrested and some were convicted, and their cases were affirmed by the state appellate court.[20] (Commonwealth v. Murdock, 149 Pa.Super. 175, 27 A.2d 666.) Taking the case upon certiorari, the Supreme Court of the United States reversed the convictions,[21] (Murdock v. Commonwealth of Pennsylvania, 1943, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292.) holding the ordinance unconstitutional.

"Following these convictions some of the Witnesses brought proceedings in the United States District Court to restrain the enforcement of the ordinance, which resulted in the entry of orders enjoining its enforcement.[22] (Douglas v. City of Jeannette, D.C.W.D.Pa.1941, 39 F.Supp. 32, and cf. Reid v. Borough of Brookville, Pa., D.C.W.D.Pa.1941, 39 F.Supp. 30.) The Court of Appeals for the Third Circuit reversed,[23] (1942, 130 F.2d 652.) The Supreme Court granted certiorari [24] (318 U.S. 749, 63 S.Ct. 660, 87 L.Ed. 11-25.) and upon hearing affirmed the action of the Court of Appeals [25] (Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 882, 87 L.Ed. 1324.) stating, 'we find no ground for supposing that the intervention of a federal court, in order to secure petitioners' constitutional rights, will be either necessary or appropriate.' Here is some of the language of the opinion: [26] (319 U.S. at pages 163–164, 63 S.Ct. at page 880.)

" 'The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. * * *

" ' * * * No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for injunction. * * * Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate'. * * *

" ' * * * It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court.'

"The principles enunciated in Jeannette have had wide application. One case is worthy of note where the right sought to be safeguarded in the federal court arose, as did that in Jeannette, under a Civil Rights Act, 42 U.S.C.A. §§ 1981–1983.[27] (Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138.) Stefanelli et al. sought federal relief by injunction from threatened use in a state criminal prosecution of evidence admittedly obtained in violation of the Fourth Amendment. Both the District Court and the Court of Appeals declined to intervene, dismissing the complaints. The Supreme Court affirmed, using this language:[28] (342 U.S. at pages 120–123, 72 S.Ct. at page 120.)

" ' * * * The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law. It is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue. The special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment, see, e. g., 28 U.S.C. §§ 1341, 1342, 2283, 2284(5), 28 U.S.C.A. §§ 1341, 1342, 2283, 2284(5). This concern has been reflected in decisions of this Court, not governed by explicit congressional requirement, bearing on a state's enforcement of its criminal law. (Citing several cases.) It has received striking confirmation even where an important countervailing federal interest · was involved. * * *

" 'These considerations have informed our construction of the Civil Rights Act. * * * Regardless of differences in particular cases, however, the Court's lodestar of adjudication has been that the statute "should be construed so as to respect the proper balance between the States and the federal government in law enforcement." * * *

" 'If these considerations limit federal courts in restraining State prosecutions merely threatened, how much more cogent are they to prevent federal interference with proceedings once begun. * * *

" 'The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its farflung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. * * *

" ' * * * A proper respect for those relations requires that the judgment below be affirmed.' "

To these decisions quoted from by the Court of Appeals for the Fifth Circuit I would add Snowden v. Hughes, 1943, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497, and Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, while acknowledging always that the exhaustive opinion of Mr. Chief Justice Stone in the Jeannette case remains the landmark upon which the other cases are chiefly based.

I am not unmindful of the fact that the Court of Appeals for the Fifth Circuit in Morrison et al. v. Davis et al., 1958, 252 F.2d 102, certiorari denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1075, expressed the idea that Jeannette had been modified. The later case of Empire Pictures supra expressed no doubt about the binding force of Jeannette. Also it is worthy of note that the only appellate court referring to Morrison v. Davis does so with disapproval, Fuqua v. United Steelworkers of America, 6 Cir., 1958, 253 F.2d 594. Moreover, in the instant case now before the court the Petitioner is being prosecuted, which was not the case in Morrison supra.

The treatment given Jeannette by the Supreme Court in the last few years, in my opinion, destroys all doubt concerning the continued authority of Jeannette.

I find that the Supreme Court has cited Jeannette three times since Morrison v. Davis, and has affirmed in a per curiam opinion a decision of the Court of Appeals of the Second Circuit which cited Jeannette twice.

In Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460; Jeannette was cited in a concurring opinion by Mr. Justice Black in support of a different point from that under consideration. Jeannette was also cited in support of another point by the majority opinion in Monroe v. Pape, 1961, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492, and by the dissenting opinion of Mr. Justice Frankfurter, ib., 365 U.S. at page 206, 81 S.Ct. at page 494.

Some of the language of the Court in its opinion in Monroe v. Pape makes a short discussion of that case desirable. At page 183 of 365 U.S., at page 482 of 81 S.Ct., this statement is made: "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws searches and seizures is no barrier to the present suit in the federal court."

It has long been recognized that where a plaintiff is vouchsafed rights in a federal forum or in a state forum, he has the right to choose which forum he will select for the vindication of his rights. Cf. a case which went up from this Court, Niehaus et al. v. Magnolia Textiles, Inc., 5 Cir., 1949, 175 F.2d 977; same case in State Court of Mississippi, Magnolia Textiles, Inc. v. Gillis et al., 206 Miss. 797, 41 So.2d 6. But the quoted holding is not contrary in any way with the principles of Jeannette and of Stefanelli. In each of those cases the effort was to induce the federal court to intervene in state court action before that action had been brought to a conclusion. As long as Jeannette and Stefanelli stand such a course may not be followed.

That Jeannette and Stefanelli do still stand is clearly demonstrated in two decisions rendered by the Supreme Court a week after Monroe v. Pape; Wilson v. Schnettler et al., 1961, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620. Schnettler et al. were federal narcotic agents who had arrested Wilson under circumstances which made them apprehensive that the evidence seized by them incident to the arrest would not be usable in a federal prosecution. They delivered Wilson, therefore, to the authorities of Cook County, Illinois, where Wilson was indicted. After the state court had denied Wilson's motion for suppression of the evidence he brought action in the United States District Court to enjoin the use of the evidence and the federal officers from testifying at the criminal trial in the state court. The District Court granted the motion to dismiss the action and on appeal the Court of the Seventh Circuit affirmed, 275 F.2d 932. The Court of Appeals cited Jeannette as authority for this statement: "Congress and the federal judiciary generally have refrained from interfering with the internal affairs of the States in the administration of justice, subject to review by federal courts of any federal questions involved." At page 934. It further cited Jeannette as authority for the statement: "The imminence of a trial on a narcotics charge is not such irreparable injury as demands injunctive relief under principles of judicial supervision."

The Supreme Court affirmed, citing both Jeannette and Stefanelli, using this language at pages 384–386 of 365 U.S., at pages 635–636 of 81 S.Ct.:

" * * * That court (the Illinois State Court) whose jurisdiction first attached, retains jurisdiction over this matter to the exclusion of all other courts— certainly to the exclusion of the Federal District Court—until its duty has been fully performed, Harkrader v. Wadley, 172 U.S. 148, 164 [19 S.Ct. 119, 125, 43 L.Ed. 399]; Peck v. Jenness, 7 How. 612, 624–625 [12 L.Ed. 841], and it can determine this matter as well as, if not better than, the federal court. If, at the

criminal trial, the Illinois court adheres to its interlocutory order on the suppression issue to petitioner's prejudice, he has an appeal to the Supreme Court of that State, and a right if need be to petition for 'review by this Court of any federal questions involved.' Douglas v. City of Jeannette, Pa., 319 U.S. 157, 163 [63 S.Ct. 877, 881, 87 L.Ed. 1324]. It is therefore clear that petitioner has a plain and adequate remedy at law in the criminal case pending against him in the Illinois court.

"There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused 'should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.' Ponzi v. Fessenden, 258 U.S. 254, 259, 260 [42 S.Ct. 309, 310, 66 L.Ed. 607]. Another is that federal courts should not exercise their discretionary power 'to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is * * * clear and imminent * * *.' Douglas v. City of Jeannette, supra, [319 U.S.] at [page] 163 [63 S.Ct. at page 881].

" * * * 'If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and

selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court (and, we may add, in the ruling of motions to suppress evidence, and in ruling the competency of witnesses and their testimony)—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.' Stefanelli v. Minard, 342 U.S. 117, 123–124 [72 S.Ct. 118, 121–122, 96 L.Ed. 138]."

Mr. Justice Stewart concurred specially in the decision, using these words:

"But I join in affirming the judgment. The petitioner has failed to state a case warranting equitable relief under the standards of Stefanelli v. Minard, 342 U.S. 117, 122 [72 S.Ct. 118, 121, 96 L.Ed. 138], and Douglas v. City of Jeannette, 319 U.S. 157, 163 [63 S.Ct. 877, 881, 87 L.Ed. 1324]."

Pugach v. Dollinger, 1961, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678, was not unlike Wilson v. Schnettler, et al., supra, in its facts, the use of evidence obtained by wire tapping in a prosecution in a State Court. The District Judges to which the two cases had been presented refused to grant injunctive relief, and the Court of Appeals of the Second Circuit affirmed, 277 F.2d 739. In that case the Court relied on both Jeannette and Stefanelli as binding authority, and the Supreme Court affirmed in a per curiam opinion reading: "The judgment is affirmed on the authority of Schwartz v. [State of] Texas, 344 U.S. 199 [73 S.Ct. 232, 97 L.Ed. 231], and Stefanelli v. Minard, 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138]."

From these most recent decisions of the Supreme Court I conclude that, without doubt, Jeannette and Stefanelli correctly state the law which has through the years been considered binding upon the Supreme Court in dealing with efforts to induce the federal courts to interfere in State prosecutions except under the most unusual circumstances. My holding with respect to the quoted statute governing habeas corpus is buttressed by these time honored principles governing State-Federal relationships.

For these reasons an order will be entered denying the writ, but retaining jurisdiction of the case for any matters that might arise in it in the future.