## Smith v. Lemme

*Gerald D. Prother* and *Karl D. Enzian*, for plaintiff.
*Dickson Andrews*, city solicitor, for defendant.

MOOK, P. J., August 25, 1950.—Petitioner, along with three associates, was arrested for soliciting subscriptions for magazines within the confines of the City of Meadville without a license as required by an ordinance of the city, known as city ordinance no. 2066 "defining and regulating the business of Peddlers, Hucksters, Hawkers, Manufacturer's Agents, Soliciting Agents or Solicitors; requiring the securing of a license therefor, imposing certain license fees thereon and providing penalties for the violation of any provision of this ordinance".

A hearing was held before respondent, who was at that time the police magistrate for the city, at which hearing petitioner appeared with his counsel. He was found guilty and sentenced to pay a fine of $15 and costs or serve a term of 15 days in jail.

Thereafter, he filed a petition for a writ of certiorari which was allowed by the court and pursuant thereto the magistrate filed his transcript setting forth the proceedings before him and a brief resumé of the evidence, which, on the part of the city, established that petitioner was engaged in soliciting subscriptions for magazines and that he had not registered with the city clerk and obtained a license or permit. Petitioner, who also testified at the hearing, didn't claim that he had registered or obtained a license or permit, but on the contrary asserted that he did not need to register in order to solicit for magazines.

In his petition for the writ of certiorari, he contends that "the ordinance is unconstitutional, invalid and of no effect as respects his solicitation of magazine subscriptions, being violative of the freedom of the press guaranteed by the first and fourteenth amendments to the Constitution of the United States, as well as an interference with interstate commerce, the regulation of which is reserved to the Congress of the United States by the Constitution". It is also asserted that the ordinance is invalid for the reason that petitioner and his associates are not among the classification of persons and professions to which licensing power was given to councils of cities of the third class by section 2601 of the Act of June 23, 1931, P. L. 932 53 PS §12198-2601.

In their brief counsel for petitioner have discussed the cases dealing with the commerce clause first, the first and fourteenth amendments second, and lastly

the inclusiveness of the Pennsylvania statute. Accordingly, we will follow the same order in our discussion.

*I.*

Is the ordinance an unconstitutional interference with interstate commerce?

Since counsel apparently seek to make this a test case of the validity of the ordinance in question, it is unfortunate that petitioner did not file an appeal and make a record of the testimony, as upon the present record there is nothing whatsoever to indicate that petitioner was engaged in interstate commerce. However, in our discussion we will consider all of petitioner's contentions, although it is our opinion that upon the record before us, he has no standing to complain that the ordinance is in violation of the commerce clause of the Constitution of the United States.

The pertinent sections of the ordinance provide:

"1E. A soliciting agent is any person who goes about from door to door for the purpose of securing or obtaining subscriptions or contracts for the purchase or otherwise acquiring by the person or persons solicited on his own behalf or that of another, of any magazine, book, periodical, study-course or other publications, or any of them. . . .

"2. It shall be unlawful within the corporate limits of the City of Meadville for any person or persons to be or engage in the business of peddler, huckster, hawker, manufacturer's agent, soliciting agent and/or solicitor, or any of them as defined in this ordinance, without having first obtained a permit or license for each and every person from the Mayor or City Clerk and otherwise complying with the provisions of this ordinance. . . .

"5. Application for license shall be made on a written or printed form furnished by the City of Meadville and directed to the Department of Public Affairs of the City of Meadville, signed by the applicant who shall

affirm to the truth of the facts thereon stated. Each applicant shall be required to give his age, place of legal residence, name of employer or principal, if any; the names and addressed of two reputable citizens, resident business or professional men in the United States who may be referred to as to his reputation for honesty and fair dealing, and such facts as may be necessary to establish his classification and in addition, any application for license as a manufacturer's agent soliciting agent or solicitor must be accompanied by proper certificate from the principal of such applicant on a form prescribed by the Department of Public Affairs, certifying such manufacturer's agent, soliciting agent or solicitor to be by him employed and defining the scope of his employment, and if a solicitor, the purpose of the contribution desired. . . .

"8. It is the intent of this ordinance that each licensee hereunder shall be a reputable and law-abiding person engaged only in the pursuit of lawful business, and a license shall therefore be refused any applicant who fails to sign the required application or to otherwise comply with the provisions of this ordinance, or one who upon investigation shall have been found to have been convicted of a crime or misdemeanor, or one whose references do not show him to be a reputable and law-abiding person or refuse to furnish required information as to the applicant. . . .

"15. Any person obtaining a license to engage in the business of solicitor shall not be required to pay a license fee. . . .

"19. In any instance, if a fee for license is not legally collectible from a registrant under this ordinance, the requirement of securing a license shall be still effective as to such registrant. . . .

"23. It is the intent of the Council of the City of Meadville that the Police of the City of Meadville shall be diligent in the enforcement of the provisions of this

ordinance and shall keep a careful and constant supervision over all persons engaging in any of the businesses herein set forth, for which reason it is hereby expressly declared that the license fees herein set forth are not imposed as a Tax but are imposed under the police power of the City of Meadville as necessary and required to compensate the City of Meadville for the proportionate expenses of the Police Department incurred in the investigation of applicants and supervision of said respective businesses hereby authorized to be licensed."

The ordinance is drawn under the provisions of the Third Class City Law of June 23, 1931, P. L. 932, sec. 2620; May 22, 1933, P. L. 927, sec. 1; 53 PS §12198-2620, which provides.

"Every city shall have power, by ordinance, to regulate and license each and every transient wholesale and retail business within such city for the sale of goods, wares, or merchandise, and to prohibit the commencement or doing of any such business until or unless the license required by such ordinance has been procured from the proper authorities by the person, firm or corporation desiring to commence such transient wholesale and retail business, and to enforce such ordinances by penalties not exceeding three hundred dollars and by other appropriate means. The amount of such license shall not exceed two hundred dollars for each month, or fractional part thereof, during which any such sale is continued."

It is apparent that the ordinance is drawn under this clause rather than section 2601 of the same act as argued by petitioner, as reference to section 23 of the ordinance specifically sets forth that the license fees are not imposed as a tax but under the police power.

The validity of municipal regulation of peddlers, hawkers, solicitors, etc., has been the subject of so many decisions, both State and Federal, that it is im-

possible for us to reduce this opinion to any reasonable summary of the cases, hence we resort to annotations compiled in the American Law Reports for the sake of brevity. There have been a number of annotations dealing with this general subject, the latest of which, reported in 9 A. L. R. (2d) 728, is most pertinent to the subject with which we are concerned in this certiorari. The text writer points out (page 729) that "under authorized grants of police power, emanating directly from the state constitution or from legislative grants from the state legislature by way of specific charters or general state statutes, municipal corporations may regulate any trade, occupation, calling, or business whose unrestrained pursuit might injuriously affect the public health, safety, morals, comfort or welfare, or might result in fraud or imposition on the public."

This is clearly in accord with what the Supreme Court of the United States said in Cantwell et al. v. Connecticut 310 U. S. 296, 306:

"Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose to establish his identity and his authority to act for the cause which he purports to represent".

Certainly the present ordinance is drawn just for that purpose. It is a proper exercise of police power. Does then, the fact that a license fee is tacked on to the issuance of such a permit invalidate the ordinance under the commerce clause? In the recent decision of Nippert v. Richmond, 327 U. S. 416, chiefly relied upon by petitioner, the court said, p. 425:

"As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue or discriminatory ones, are forbidden. For, though 'interstate business must pay

its way,' a State consistently with the commerce clause cannot put a barrier around its borders to bar out trade from other states and thus bring to naught the great constitutional purpose of the fathers in giving to Congress the power 'to regulate Commerce with foreign Nations, and among the several states'. . . . Nor may the prohibition be accomplished in the guise of taxation which produces the excluding or discriminatory effect."

In that case the court held that the tax, which consisted of a $50 license fee plus one half of one percent of gross business, was burdensome and discriminatory. Distinguishing the case from McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, the court pointed out that it required the payment of a fee of $50 to transact one single item of business, or one solicitation whether any sale was completed or not. But these are tax cases; the levies were made for the purpose of procuring revenue; no question of the police power of the State was involved. In the present case the object of the ordinance is to require registration, the license fee is incidental and only helps defray the cost of enforcing the ordinance. It applies to all solicitors whether from Meadville, Crawford County, the State of Pennsylvania or elsewhere, it is nondiscriminatory and the fee is neither excessive or burdensome. Moreover, there is nothing in this case to·show that petitioner, had he registered, would have been required to pay a fee, since there is a provision in the ordinance (section 19) for the issuing of a license without payment of a fee.

Some of the more recent decisions from other jurisdictions upholding similar ordinances are set forth in the annotation previously referred to; without commenting upon all of them, here follow some of the citations: In re Hartmann, 25 Cal. App. (2d) 55, 76 P. (2d) 709; In re Albrecht, 25 Cal. App. (2d) 750, 76

P. (2d) 713; In re Mares, 75 Cal. App. (2d) 798, 171 P. (2d) 762; Slater v. Salt Lake City, Utah, 206 P. (2d) 153, 9 A. L. R. (2d) 712.

In both of the last mentioned cases the courts, in opinions which fully consider all the arguments made here, point out that the prohibition against street solicitation was not absolute, it affected interstate commerce only indirectly, it did not discriminate between interstate and intrastate commerce, and in each case the courts concluded that the ordinances were matters of local concern with which it would be difficult for Congress to deal directly and were well within the rule laid down in California v. Thompson (1941), 313 U. S. 109, sanctioning local regulations which do not materially affect the flow of interstate commerce.

For the foregoing reasons, it is our opinion that the Meadville ordinance is not unconstitutional as a burden on interstate commerce.

## II.

It is next argued that the ordinance constitutes an abridgement of the freedom of the press guaranteed by the first amendment and an abridgement of the privileges and immunities of citizens guaranteed by the fourteenth amendment of the Constitution of the United States.

These contentions were advanced in the cases previously cited and rejected by the courts on the ground that petitioner's activity was of a purely commercial nature.

As stated in 9 A. L. R. (2d) at 732, in the Mares case, supra:

"The Court supported its holding by quoting from Valentine v. Chrestensen (1942) 316 U. S. 52, 86 L. ed. 1262, 62 Sup. Ct. 920, wherein the United States Supreme Court, upholding ordinances prohibiting distribution of business advertising matter on the streets,

had stated that while it has unequivocally held that the streets are proper places for the exercise of freedom of communicating information and disseminating opinion·and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares, it is equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising."

In the case principally relied upon by petitioner in support of his argument on this point, to wit, Murdock v. Pennsylvania, 319 U. S. 105, the Supreme Court said in referring to other decisions holding invalid certain municipal ordinances, p. 113:

"In that case, as in the present ones, we have something very different from a registration system under which those going from house to house are required to give their names, addresses and other marks of identification to the authorities. In all of these cases the issuance of the permit or license is dependent on the payment of a license tax. And the license tax is fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues. It is not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question. It is in no way apportioned. It is a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment. Accordingly, it restrains in advance those constitutional liberties of press and religion and inevitably tends to suppress their exercise that is almost uniformly recognized as the inherent vice and evil of this flat license tax."

The Meadville ordinance appears to be everything the court says the ordinance referred to in the foregoing quotation is not. The former does set up a regis-

tration system requiring pertinent information concerning the character of the individual solicitor as well as the character of his business. This is proper to protect the public from fraud and deception and from the criminal who is planning further criminal exploits. The license tax is nominal and for the purpose of defraying the cost of enforcement. In the event the solicitors are not legally required to pay a license fee as in the case of distribution or sale of religious or other noncommercial literature, no license fee at all is required. The ordinance is designed to be and is in all its aspects a police regulation of a type of business; it isn't designed to, nor does it in its operation, suppress anything let alone free speech or a free press. And it is lawful for the State or municipality to control and regulate such businesses in the public interest. In the opinion in the Murdock case the court said (319 U. S. at 110) :

"Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital. As we stated only the other day, in Jamison v. Texas, 318 U. S. 413, 417, . . . The states can prohibit the use of the streets for the distribution of purely commercial leaflets, even though such leaflets may have a 'civic appeal, or a moral platitude' appended."

The Jehovah Witness cases, such as Lovell v. The City of Griffin, 303 U. S. 444; Jones v. Opelika; Bowden v. Fort Smith; Jobin v. Arizona, 319 U. S. 103; Martin v. City of Struthers, 319 U. S. 141; Murdock v. Pennsylvania, supra, and Com. v. Homer, 153 Pa. Superior Ct. 433, and others, all relate to the distribution of literature for religious purposes and have no application to purely business enterprise as petitioner was engaged in in the present case.

Neither do the cases of Winters v. New York, 333 U. S. 507, or Thornhill v. Alabama, 310 U. S. 88, apply,

the first has to do with the absolute prohibition of certain types of printed matter, and the second the prohibition of picketing in certain areas. As a matter of fact, we have examined all of the cases cited by petitioner and find none holding that a State or municipality may not through its police power regulate such a commercial enterprise as we are concerned with here through the use of a license tax so long as the tax is reasonable and is neither discriminatory or prohibitive.

In fact the decisions are uniformly to the contrary. Here again for the sake of brevity, we adopt the discussion of these cases set forth in 40 Am. Jur. 922.

"It appears from some cases that, by a general grant of power, the state imparts to its creature, the municipality, all powers necessary to the protection of its citizens in their persons and property; that ordinances passed in the legitimate exercise of this power are valid; and that an ordinance regulating or prohibiting peddling and like occupations within the municipal limits is as clearly justified by the police power of a municipality as a state statute regulating the occupations. But other cases support the view that the general police power of a municipality is not broad enough to warrant the outright prohibition of these occupations. Certainly a municipal corporation may regulate peddlers and other persons in so far as they affect a properly authorized municipal market, or interfere with the use of a highway by the public, and it may restrict peddling to certain districts of the city and to certain hours. It has been held that the power to establish rules of this nature may be delegated to a single officer of the municipality. . . .

"Apart from its power to regulate by police measures the occupations herein under discussion, a state may adopt laws affecting those occupations in the exercise

of another power, namely, the taxing power. Ordinarily, and unless inhibited by some provision of a local Constitution, a state, or a municipality to which power has been delegated, may impose taxes on any business or occupation, including those engaged in peddling, soliciting, or dealing as transients or itinerants. . . . A law may constitutionally be intended to fulfil the double function of regulating and producing revenue, where the body adopting it has both police and taxing powers. It is just and proper that persons of these classes should be taxed, and should be made to contribute to the expense of government administration in the communities in which they carry on their trade or business, and laws adopted with this end in view are uniformly considered valid."

For the foregoing reasons it is our opinion there is no merit in the contention that the ordinance is an abridgement of the rights conferred by the first and fourteenth amendments of the Constitution of the United States.

### III.

It is finally contended that the ordinance is illegal and void with respect to persons who solicit magazine subscriptions for the reason that such persons are not within the classification of persons and occupations whom municipalities may tax under the power delegated to them by the legislature of the Commonwealth.

As previously mentioned it is suggested by petitioner that the ordinance was enacted under the provisions of The Acts of June 23, 1931, P. L. 932, sec. 2601; May 22, 1933, P. L. 927, sec. 1; July 12, 1935, P. L. 718, sec. 1; 53 PS §12198-2601.

This section provides: "council may, by ordinance, levy and collect a license tax for general revenue purposes, not exceeding $100.00 each, annually, on all . . . hawkers, peddlers, produce or merchandise vendors, . . . merchants of all kinds."

It is argued by petitioner that since the act does not specifically include magazine subcription solicitors that the municipality has no authority to pass an ordinance providing for the collection of tax from persons engaged in such occupation and therefore, the ordinance now is considered invalid as to him.

As we have previously stated in this opinion it appears to us that the ordinance was adopted under the provisions of section 2620, which we quoted in full on page four of this opinion, rather than section 2601. However, we think that either section is broad enough to authorize the city to license persons engaged in soliciting magazine subscriptions or soliciting orders for any other merchandise. The business of selling magazines is not essentially different than selling other merchandise and we think that a person selling magazines may be properly classified as a merchant, or a merchandise vendor or a person engaged in a retail business. It is not necessary that every kind of merchant be stated in the law. If we carried this argument to its logical conclusion, we would have to say that if the act did contain the words magazine subscription solicitor it would have to also describe the kinds of magazines, such as news magazines, fiction magazines, humor magazines, comics and what-not. No such detail is required. We can clearly say that the purpose of this statute is to regulate and license all kinds of business and we think that this objective of the statute was accomplished by the language used. Petitioner's contention that the ordinance is illegal with respect to him is, therefore, rejected and, accordingly, we enter the following

### Order

And now, August 25, 1950, the writ of certiorari heretofore granted in the above-entitled case is dismissed and petitioner is ordered to pay the costs.