Commonwealth of Penna. *v.* Devenney, Appellant.

84

Argued October 16, 1931. 

 Before Trexler, P. J., Keller,
Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Charles D. McAvoy,* for appellant.

*Frank X. Renninger,* for appellee.

Opinion by Keller, J., November 11, 1931:

Appellant was convicted in a summary proceeding before a justice of the peace of cruelty to animals, and fined ten dollars. By special allowance she appealed to the court of quarter sessions. A judge of that court heard the case *de novo,* adjudged her guilty and sentenced her to pay a fine of ten dollars and costs. She has appealed to this court.

On such an appeal it is not our province to try

the case again. Our function is to determine if (1) there was evidence to support the finding, and (2) the law has been properly applied. If the answer to these two questions is "Yes," the judgment will be affirmed, irrespective of whether we would have made the same finding of fact or not.

The word "wantonly" as used in the Act of March 29, 1869, P. L. 22, does not necessarily imply any active ill will or personal malice towards the animal abused, or its owner. As employed in the statute it is sufficient if the acts complained of were cruel and were done recklessly and without regard to consequences. See Com. v. Thompson, 74 Pa. Superior Ct. 149; 40 Cyc. 294; 3 Rawle's Bouvier's Dictionary 3418.

The judge found, in effect, that the appellant purchased the horse in question of one Frederick at the Hatfield Fair and took him to her home. Being dissatisfied with her purchase and alleging that the horse was unsound, several weeks later she ordered him to be returned to the stall in the fair grounds, where he had been kept when she bought him, although no fair was then in progress, the fair grounds were nearly deserted and Frederick was no longer in possession of the stall; and she made no provision for feeding or watering the horse beyond leaving word with a boy who was not employed by her or in the service of Frederick, to tell another boy, not in the employ of either, to take care of him until Frederick came there and got him. The same evening she notified Frederick by telephone what she had done and he told her that he would not accept the horse or care for him. Notwithstanding this she made no effort to see that the horse was fed or watered. The horse was rescued the following Sunday by an agent of the Society for Prevention of Cruelty to Animals, and the judge found as a fact that he had had nothing to eat since the previous Wednesday.

There is evidence in the case to support these findings. That being so, we think the law was properly applied and warranted the defendant's conviction.

We agree with the following discussion of the law as applied to the facts by the learned judge of the court below. "The defendant purchased this horse, and had possession of him. Whatever may have been the equities between herself and the man from whom she purchased the animal, whatever may have been her remedies under the guarantee given by Mr. Frederick, she had no right to send this horse back to the nearly deserted fair grounds, and there wash her hands of him by leaving word with a fourteen year old boy to tell Frederick, who had nothing to do with the stall, or the fair grounds at that time, to come and take care of his horse. That night, when she called up Frederick, he told her that he would not accept the horse, or care for him, and still, with this knowledge, she made no effort to see that the horse was fed, but simply abandoned him to his fate. The most charitable view to take of her conduct, is that she believed Frederick would weaken and go after the horse. It was her duty, however, to find out if the animal was being cared for. Dumb animals cannot be allowed to suffer and starve while human beings squabble over the rights and duties incident to the ownership and dominion which they claim over them. The defendant committed a rash, inexcusable and inconsiderate act when she caused this horse to be locked in a stall without making any arrangements for his care, and without investigating to ascertain if he was receiving food and water."

The fact that her brother, at her direction, took the horse to the fair grounds, did not relieve the defendant of her duty relative to the care, feeding and watering of the horse until actual delivery of him was made to Frederick.

The remaining questions raised do not merit special consideration.

The assignments of error are overruled and the judgment is affirmed, at the cost of the appellant.