## Commonwealth v. Wagner

*F. Porter Wagner,* District Attorney, and *E. Robert Marks,* Borough Solicitor, for Commonwealth.

*James P. Costello, Jr.,* and *Donald A. Lewis,* for defendants.

KREISHER, P. J., November 29, 1957.—Sometime during the fall of 1956 the Yanulla Trucking and Excavating Company of Hazleton moved a well drilling outfit to the campus of a private school located partly in the Township of Mahoning and partly in the Borough of Danville, Montour County.

On November 6, 1956, shortly after 3 p.m., the above captioned defendant, being an employe of the said trucking company, proceeded to transport the said well

drilling outfit by a tractor-trailer rig to a new location in Northumberland County which required him to travel west on Mill Street in said borough in order to cross the river bridge into Northumberland County.

After proceeding a few blocks on Mill Street in said borough, a borough police car stopped defendant and directed him to drive his outfit to the borough scales maintained at the Municipal Water Works located near said river bridge.

After the outfit was weighed by an official weighmaster, the officer lodged the following information before the nearest available justice of the peace:

"COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF MONTOUR                              :  ss

"Before me the subscriber, Austin H. Klase, the nearest available Magistrate in and for said county, personally appeared John D. Bilder, Police Officer of the Danville Borough, who upon oath administered according to law, says, that in Danville Borough, Mill Street, County of Montour, Commonwealth of Pennsylvania, on the Sixth day of November A. D., 1956, Defendant above named, did unlawfully operate a tractor (Rogers) bearing 1956 Pennsylvania Registration Number Z 660 H and a trailer bearing 1956 Pennsylvania Registration Number 31 S 3 on a public highway, within this Commonwealth. In that the defendant above named at or about the hour of 3:03 o'clock P.M., did then and there operate the said combination of Vehicles with a gross weight of 93,820 pounds. This is 18,820 pounds over and above the maximum weight allowed vehicles registered in this classification, which is 75,000 pounds. This is over the three per cent (3%) and is a violation of Section 903, Sub-Section 'A' Article 9, Act 403, P. L. 1929, as amended by Act 270 approved May 26, 1943, and further amendments."

In accordance with the provisions of the act of assembly, defendant was arrested on view and taken to

the office of the justice where the officer lodged the above quoted complaint.

At 4:15 p.m. of the same date, the said information was read to defendant who immediately entered his plea of guilty.

The justice then imposed a fine of $1,800 and costs of $5 and directed that the outfit be impounded pending payment of said fine and costs as directed by the act of assembly in overweight cases.

On November 9, 1956, upon receipt of the fine and costs, the outfit was released and moved to its new location under a special permit which is provided for in The Vehicle Code for overweight outfits of this nature, which permit, we understand, was secured after the above mentioned violation, as it is admitted that the permit which defendant had in his possession at the time of the alleged violation did not cover the outfit he was operating.

On November 13, 1956, on petition of defendant to the court of common pleas, a writ of certiorari was allowed directing said justice to send up the record of the said prosecution to be reviewed according to law and said writ was made returnable to November 29, 1956.

Paragraphs 1 and 2 of the petition recite the foregoing facts, and the remaining paragraphs read as follows:

"3. That the proceedings of the Justice of the Peace were defective, irregular and unlawful in the following particulars:

"(a) That a proper hearing was not held.

"(b) That proper consideration was not given to evidence concerning permit given by the Department of Highways, Commonwealth of Pennsylvania.

"(c) That inadequate consideration was given as to the weight of the vehicle.

"(d) That inadequate consideration was given to the manner in which the defendant was apprehended for the alleged violation.

"(e) That inadequate consideration was given to the consideration of the territory or area over which the defendant allegedly transported the vehicle.

"4. That your petitioner verily believes that the proceedings before the Justice of the Peace were illegal and that justice has not been done.

"5. That your petitioner is innocent of the offense charged."

On November 29, 1956, counsel for defendant filed a bill of exceptions containing seven main paragraphs with a total of 17 subsections on the exceptions therein alleging the record of the justice of the peace on its face is defective.

Thereafter, the matter was placed on the argument list and the court heard oral argument of counsel. At this time the district attorney requested additional time to file a written brief with the court at a later date which was granted. Likewise, the solicitor for the Borough of Danville requested permission to join the district attorney since the fine imposed, being rather substantial, if upheld would, under The Vehicle Code, be paid to the municipality wherein the alleged violation occurred.

The request was granted and said solicitor was given the opportunity to file a brief on behalf of the borough at a later date.

The brief of counsel for defendant and the brief of the district attorney has been in the hands of the court for a considerable time and to date we have not received a brief from the solicitor of the borough, but now understand that he assisted the district attorney in preparing that brief and waived his right to file an additional brief.

At the time of oral argument, counsel for defendant spent considerable time discussing the facts and the merits of the case which might properly be considered on an appeal after holding a hearing de novo. However, since this matter was brought before the court of common pleas on certiorari, it is our understanding that the merits of the case are not before the court as our inquiry is confined to only an examination of the alleged defects appearing on the face of the record.

"*Certiorari* to Common Pleas is a narrow *certiorari* which confines our inquiry to the regularity of the proceedings and the jurisdiction of the magistrate. We do not, as the appellate courts do, consider the proceedings as on a broad *certiorari* touching evidentiary matters": Commonwealth of Pennsylvania v. Kuzma, 37 Erie 325, 332.

We next consider the rather well-established rule that certiorari will not lie after defendant pleads guilty to a summary conviction before a justice of the peace and pays the fine and costs. The reason for this ruling is stated in Commonwealth v. Deisroth, 1 D. & C. 2d 504, on page 506, as follows:

"The fine and costs having been paid, the judgment of sentence has been fully complied with, the summary proceedings have come to an end and the certiorari brings up nothing to review."

This question is followed by a whole host of cases including the early case of Commonwealth v. Gipner, 118 Pa. 379.

Counsel for defendant argues this principle is not applicable in this case because the act directing the outfit to be impounded until payment requires payment immediately in order to have the equipment released and put back on the job. Furthermore, they say since the Commonwealth failed to file a motion to quash, the court may not quash on its own motion.

The latter contention is without merit for two possible reasons. The first is stated in the brief filed by the district attorney as follows:

"That after the filing of the petition it was verbally agreed between the district attorney and counsel for the defendant that despite the filing of the petition for allowance of certiorari, the Court would be requested to hear the case on the merits. Subsequently, counsel for the defendant attempted to notify the district attorney that the argument would be limited to procedural matters before the justice of the peace. However, the district attorney did not receive this information before the date of the argument. Therefore, the district attorney and counsel for the Borough of Danville did not exercise the right of filing a motion to quash the petition for allowance of certiorari."

The second reason is answered by the case of Commonwealth v. Snyder, 67 Dauph. 254, where the writ was discharged on the court's own motion, it appearing defendant voluntarily paid the fine and costs under protest, the court holding the proper remedy in such circumstances is to take an appeal under the Act of April 17, 1876, P. L. 29, as amended by the Act of June 3, 1953, P. L. 272, 19 PS §1189.

In order to pass upon the first contention above mentioned, it is necessary to examine the overweight statute which is The Vehicle Code of May 1, 1929, P. L. 905, art. IX, sec. 903, as amended, 75 PS §453. The penalty provision of the act provides, inter alia, as follows:

". . . In default of payment of any fine and costs of prosecution imposed, pursuant to the foregoing provisions of this penalty clause, the magistrate shall impound the vehicle, or combination of vehicles, and order the arresting officer, or other peace officer, to seize them. The magistrate shall, forthwith, notify the sheriff of the county wherein the violation occurred, who shall store the impounded vehicle, or combination

of vehicles. The sheriff's costs, storage costs, and all other costs incident to impounding, shall be deemed additional costs of prosecution. The sheriff shall give immediate notice by telegram and registered mail, return receipt requested, of the impoundment and location of the vehicle, or combination of vehicles, to the owner . . ."

In the written brief filed by counsel for defendant it is stated:

"The owners of the vehicle and defendant were advised that it was necessary to pay a fine of Eighteen Hundred ($1800.00) dollars and costs; otherwise, the vehicle would be turned over to the sheriff and the fine or penalty collected in that manner.

"On November 9, 1956, counsel for the defendant appeared at the office of Justice of the Peace Klase where he was advised that bail for an appeal could not be entered and that payment of the fine was necessary, and accordingly, it was paid. A receipt was received, reciting that the same was paid under protest."

It is our opinion counsel for defendant should have realized that the above quoted penalty provision of the overweight statute does not deprive a defendant of his right to appeal as provided in subsection (a) of the Act of May 1, 1929, P. L. 905, art. XII, sec. 1204, as amended, 75 PS §734. Nor does it deprive him of his right to waive a summary hearing under subsection (b) of the said act and have the record returned to the quarter sessions court of the county for hearing de novo. However, this action must be taken promptly and adequate bond must be furnished. It does not apply after defendant enters his voluntary plea of guilty.

Subsection (a) refers to the Act of April 17, 1876, P. L. 29, as amended, 19 PS §1189, and action under this act may be resorted to even after the fine and costs are paid as the Act, as amended June 3, 1953, P. L. 272, reads as follows:

"In all cases of summary conviction in this Commonwealth, before a magistrate or court not of record, either party, even though any fine imposed has already been paid, may, within ten days after such conviction, appeal to the court of quarter sessions of the county in which such magistrate shall reside or court not of record shall be held, upon allowance of the said court of quarter sessions, or any judge thereof, upon cause shown; . . . . If the defendant pays the fine or penalty and costs imposed and wishes to take an appeal under the provisions of this section he shall give bail in double the probable amount of costs that may accrue in the final disposition of the appeal."

However, since the penal provision of the overweight statute as above quoted provides for impoundment, and counsel was under the impression he could not appeal and that he had to pay to have the vehicle released, and was advised by the justice of the peace, we are reluctant to impose the above mentioned rule as set forth in the case of Commonwealth v. Deisroth, supra.

We reach this conclusion for two reasons. First, it is our opinion that the action of the justice in refusing to accept bond and requiring payment in full before releasing the impounded vehicle amounted to duress sufficient to abrogate said rule, and second, counsel for defendant desired to attack the legality of the proceedings by way of certiorari so that the alleged procedural defects would not be waived as is the case on the taking of an appeal.

An appeal is a statutory proceeding to bring the case into the court of quarter sessions for a hearing de novo on the merits of the case, and all procedural defects are thereby waived except those going to the jurisdiction of the justice: Commonwealth v. Beloff, 166 Pa. Superior Ct. 286.

The writ of certiorari is a constitutional prerogative

issued out of the court of common pleas and is used to test not only the jurisdiction of the minor court, but also the regularity and the legality of all procedural matters before the justice. The judgment to be entered by the reviewing court is set forth in Commonwealth v. Benson, 94 Pa. Superior Ct. 10, on page 14, as follows:

"The judgment on writs of *certiorari* from a summary conviction before an alderman or justice of the peace is to (1) sustain or (2) set aside the judgment; on *appeals* from such conviction the judgment is (1) guilty or (2) not guilty; (1) conviction or (2) acquittal."

"The defendant in a summary proceeding before a magistrate must make his election to proceed by an appeal or by certiorari; he cannot do both": Commonwealth v. Conn, 183 Pa. Superior Ct. 144.

It is a maxim of the law, almost as old as the common law and with considerable common sense, that summary proceedings being in derogation of the common law, since it deprives defendant of the right of trial by jury, and being authorized only under the police power of the legislature by statute, must be full, complete and accurate. The record thereof must not only affirmatively show the jurisdiction of the justice but it must also be so full, complete, regular and accurate on its face that a conviction thereunder could be pleaded autrefois convict in bar to another prosecution for the same offense: Commonwealth v. Lindsay, 22 Erie 145.

The necessary requirements which must be incorporated in the record of a justice of the peace in summary conviction cases have been ably set forth at length in a great many cases, but we think reference to but two of these cases will serve the purpose of this opinion.

Judge Alessandroni of Philadelphia, in Commonwealth v. Lewis, 10 D. & C. 459, cites, inter alia, 11 requirements as follows:

"1. The name and address of the defendant.

"2. The date of his arrest.

"3. The manner in which he was arrested.

"4. The name of the person making the arrest.

"5. The charge on which he was arrested.

"6. The names and addresses of the witnesses who appeared against him at the hearing, as well as the date of the hearing.

"7. The fact that the defendant and his witnesses were given an opportunity to testify, and the names and addresses of the defendant's witnesses, if any were called.

"8. A brief statement of the testimony of each witness heard by the magistrate, including the time and place of the commission of the offense.

"9. The fact that, after hearing the testimony, the magistrate convicted defendant of the offense.

"10. An exact description of the offense, referring to the act of assembly or ordinance which was violated.

"11. The sentence imposed upon defendant by the magistrate, and the fact that the defendant was personally present when such sentence was pronounced."

In the case of Gorman v. Stewart, 21 Dist. R. 1138, there are cited, inter alia, eight requisites of a proper record, as follows:

"1. It should appear that the offence was committed within the jurisdiction of the magistrate.

"2. The information or charge against the defendant should appear at large in the justice's record.

"3. That notice of the information was conveyed to the defendant and an opportunity given to him to defend.

"4. The service of the warrant on the defendant and his appearance or non-appearance.

"5. The section of the act violated, quoting its language or the substance thereof, showing that the offense is within such act and unlawful.

"6. The confession or defence of the defendant.

"7. A statement of the evidence submitted on the one side and on the other.

"8. A judgment of conviction and the imposition of a fine in conformity with the law."

Taking up the exceptions as filed by defendant in the instant case and making an examination of the record sent up by the justice of the peace, we are at once confronted with a meager, vague, incomplete and irregular record. We are not unaware of the principle of leniency when examining records of the minor judiciary as stated in the early case of Commonwealth v. Challis, 8 Pa. Superior Ct. 130, on page 132, as follows:

"We are not disposed to scrutinize the records of justices of the peace with hypercritical nicety in order to discover technical defects upon which to defeat their judgments. Where it appears, in substance, that the justice had jurisdiction of the cause of action and of the parties, their judgments will be sustained regardless of the want of technical form in the proceedings."

However, since the legislature has seen fit to increase the authority of a justice of the peace to summarily impose a fine as large as the one imposed in the present case, and in addition thereto, impound property of defendants that might easily amount to many thousands of dollars, we believe these proceedings should be not only full, complete and accurate, but that they should be at least somewhat similar to judicial proceedings. The record should show every step and that defendant was fully advised not only of the charge lodged against him and the act of assembly allegedly violated fully communicated to him, but he should also be advised of his rights as well as including that of being represented by counsel.

The transcript returned in this case reads as follows:

"Commonwealth
of
Pennsylvania
A.

| | |
|---|---|
| John Wagner (Operator) 725 Lincoln Street Hazleton, Penna. FINE $1800.00 J. of P. Costs 5.00 ——————— Total $1805.00 PAID BY CASH UNDER PROTEST. (NOTATION) (OWNER) Yanulla Trucking and Excavating Company, Hazleton, Penna. | State of Pennsylvania: ss County of Montour: CHARGE: OVERWEIGHT (Section 903, Sub-Section (G) Act 403, Article 9, P.L. 1929 and further amendments thereto. Viz: Act No. 70 of the General Assembly of 1955) |

"November 6, 1956, Information is laid by John D. Bilder, Police Officer, of the Danville Borough, Penna.

"Same date, 4:15 P.M. John Wagner, Defendant above named, in accordance with provisions of said Act is brought in. Information is read, Defendant pleads guilty to the charge whereby Fine of $1800.00 and Costs of $5.00 is imposed. Vehicles and cargo is impounded and held.

"November 9, 1956 Said amount of Fine and Costs is paid by Cash. Vehicles and cargo released.

"And now, November 26, 1956 at the instance of F. Porter Wagner, District Attorney, I, Austin H. Klase, J. of P. am hereby notified that an appeal or petition has been made to the Court of said County and requests that Transcript be returned to said Court."

The act of assembly which defendant is alleged to have violated is The Vehicle Code of May 1, 1929, P. L. 905, art. IX, sec. 903, as last amended by the Act of June 1, 1956, P. L. 1999, 75 PS §453, subsec. (a), which provides, inter alia, as follows:

"(*a*) Commercial motor vehicles and truck tractors, other than those electrically operated shall not be used or operated on any highway with gross weight exceeding those specified for the several classes as follows: . . ."

Subsection (*b*) applies only to electrically operated commercial motor vehicles.

Subsection (*c*) provides, inter alia:

"(*c*) Trailers and semi-trailers, except trailers designed and used exclusively for living quarters, shall not be used or operated on any highway with gross weight exceeding those specified for the several classes as follows: . . ."

Subsection (*d*) provides, as follows:

"(*d*) Whenever two vehicles are used or operated as a combination on any highway, the gross weight of the combination shall not exceed the sum of the maximum gross weights allowed for the respective vehicles and, in addition, the gross weight of the combination shall not exceed the gross weight specified as follows:

"Combination.        Maximum Gross Weight in Pounds.

"Truck tractor and single-axle semi-trailer 50000
"Truck tractor and two-axle semi-trailer   60000
"Commercial motor vehicle and trailer     62000."

Subsection (*e*) provides, as follows:

"(*e*) Maximum gross weights, provided in this section, are allowed only under conditions where no other restrictions are provided in this act or in any other laws regulating maximum gross weights of vehicles."

Subsection (*f*) provides as follows:

"(*f*) No vehicle shall be operated upon any highway with weight in excess of eighteen thousand (18,000) pounds upon any axle less than seventy-two (72) inches from any other axle, or with weight in excess of twenty-two thousand four hundred (22,400) pounds upon any other axle, or with weight in excess of eight

hundred (800) pounds upon any one wheel for each nominal inch of width of tire on such wheel."

Subsection (g) provides:

"(g) No vehicle with four or more wheels shall be operated upon any highway unless any two axles be at least thirty-six (36) inches apart. No truck tractor and semi-trailer shall be operated as a combination on any highway unless the rearmost axle of the truck tractor and the foremost axle of the semi-trailer be at least ninety-six (96) inches apart."

Subsection (h) provides:

"(h) None of the restrictions provided in this section shall be applicable to fire department equipment or to any motor bus or motor omnibus."

In quoting the information attached to the transcript, we used the letter "A" following the word "Sub-Section" in the last line as that is the letter that presently appears therein. However, an obvious erasure appears under the letter, as well as the partial remainder of another typed letter which appears, to be either a "b" or a "g".

We are naturally inclined to think that the original letter was a "g" because that is the letter of the subsection used in the transcript as above quoted, since the transcript must have been prepared after the information and from the information it would seem logical that the letter "g" was originally used in the information. Just when, where, why, how or by whom the erasure was made and the letter "a" inserted, we have no way of knowing, but we do know by looking at the act of assembly above quoted that neither subsection (a) or subsection (g) apply to the case at bar, because even though the information and transcript do not so state, it is our opinion that the prosecution should have been under subsection (d), as we believe it logical to assume that defendant's outfit was a combination.

This discrepancy is the basis of defendant's first

exception and we are inclined to sustain the argument that this is a fatal defect.

In Commonwealth v. Gelbert, 170 Pa. 426, it was held that the transcript or docket entries cannot supply a fatal defect or omission in the information and "that none of the common law or statutory essentials of a summary conviction have been yielded, and they seem, 'to be necessary to bound arbitrary power and prevent oppression and injustice to the citizen of a republic, as to the subject of a crown.' Commonwealth v. Borden, 61 Pennsylvania, 272."

In McKeesport v. Salis, 167 Pa. Superior Ct. 404, 407, it is stated:

"It was not within the province of the court to convict defendant of an offense different from that charged before the magistrate. ' "When the appeal has been allowed, the charge or cause of action remains the same, but the proceedings to determine the guilt or innocence of the defendant are de novo" ': Manorville v. Flenner, 84 Pa. Superior Ct. 246, 249. See Cole v. Arkansas, 333 U. S. 196, 92 L. Ed. 644.

"Defendant, having been charged and convicted by the magistrate of the violation of section 2 of the ordinance, could not on appeal be convicted by the court of the violation of section 1 of the ordinance. There was no proof that defendant had violated section 2 of ordinance No. 1549, as amended, and no permit could be involved in section 1 of the ordinance. See Com. v. Scott-Powell Dairies, 128 Pa. Superior Ct. 598, 600, 194 A. 684; Com. v. Devenney, 103 Pa. Superior Ct. 83, 85, 156 A. 809. The defect appearing on the record is fundamental and requires a reversal of the conviction."

How did defendant know what he was pleading guilty to under the state of the above quoted record?

Counsel for the Commonwealth attempts to explain the discrepancy by reference to the Act of 1929 where-

in subsection (*g*) relates to combination outfits. This reasoning, however, makes the information defective as it recites subsection (*a*), which relates only to commercial motor vehicles and truck tractors, and not to combination outfits. The case of Commonwealth v. Gelbert, cited above, makes this argument moot.

Comparing the above quoted transcript with the above quoted requisites, there are a number of deficiencies and defects that immediately strike one's eye. The whole record appears like a very swift and perfunctory proceeding.

The record does not present the manner in which defendant was arrested, but since no warrant was attached to the transcript, we suppose defendant was arrested on view since the penalty provisions of the above quoted act provide for such an arrest, but the record should so state. It does not appear that the prosecutor was sworn or that he gave any evidence. The information states the maximum weight allowed vehicles registered in this classification is 75,000 pounds; however, there is nothing in the record to show how the justice arrived at this figure and we can find no such figure in the act. It may be defendant had a permit for this amount, but this is purely a matter of conjecture on our part.

The bill of exceptions filed by counsel for defendant under paragraph four sets forth the following alleged defects:

"(a) It does not appear thereon that the offense was committed within the jurisdiction of the Justice of the Peace.

"(b) The information or charge does not appear at large upon the record of the Justice of the Peace.

"(c) It does not show the manner in which he was arrested.

"(d) It does not show the name of the person making the arrest.

"(e) The charge on which he was arrested is at variance from that shown in the information.

"(f) It does not show the names and addresses of witnesses who appeared against the Defendant.

"(g) It does not show a brief statement of the testimony of any witnesses heard by the Justice of the Peace.

"(h) It does not show that the Justice of the Peace conducted a hearing.

"(i) The record does not show a proper description of the offense. It merely recites, 'Charge: Overload . . . citing statute . . .'.

"(j) It does not show that the sentence imposed upon the Defendant was imposed with the Defendant personally present when the sentence was pronounced.

"(k) It does not show the name and place of residence of the Justice of the Peace.

"(1) It does not show that any witness was sworn or affirmed.

"(m) It does not show to whom the fine is payable."

Paragraph six reads as follows:

"(6) The record of the Justice of the Peace, as appears in the transcript, indicates a fine imposed, 'In accordance with Act No. 70 of 1955 fine of $1800.00 and costs of $5.00 is imposed.' It appears that such fine, if any there should have been, would be imposed under Act No. 671, Section 5, which appears to be effective January 1, 1957. (See Purdon's Pennsylvania Statutes Annotated, October 1956, supplement 1955 Pocket Parts, Title 75, Section 501, page 677)."

Paragraph seven reads as follows:

"(7) The transcript of the record does not show that the Justice of the Peace refused to accept bond in twice the amount of the fine and costs, but insisted upon payment of fine and costs, payment of which was made under protest."

It would serve no useful purpose for the court to

180

pass seriatim upon all of the exceptions filed by counsel for defendant in this already too lengthy opinion, because we think the first exception above discussed makes it apparent that upon its face the record is fatally defective.

We understand the borough fathers have been looking forward with formulated plans for this windfall, and that our conclusions will be most unpopular. However that may be, we think every defendant is entitled to a proper legal trial with all of his rights fully protected, whether it be in the court of quarter sessions before a jury, or just a summary matter before a justice of the peace.

The legislature has reposed great powers in the office of justice of the peace, and therefore, the duties and responsibilities have likewise increased to the end that matters of this magnitude should not be dealt with lightly, but great care should be used to see that the proceedings are not only regular and legal, but also given sufficient time, attention and consideration, especially of defendant's rights, to make the record appear that at least some semblance of a judicial proceeding was held and that substantial justice was administered.

The fact that defendant pleaded guilty does not change the situation one iota because such a plea, within a few minutes after defendant's arrest, may have been prompted by any one of many various influences, which we do not deem necessary to discuss in this opinion, but are presently very vivid in our mind.

The conclusions to be drawn in this case, therefore, are that the record of the justice of the peace is irregular, incomplete and fatally defective for a number of reasons. However, we are passing specifically upon only the first exception. See Commonwealth v. Senft, 8 York 65. We are satisfied it must be sustained, and to this end, we make the following

*Order*

And now, to wit, November 29, 1957, defendant's exceptions and exception number one, in particular, are sustained. The judgment of the justice of the peace is reversed and set aside, and it is directed that the said justice shall return to defendant the fine and costs which he collected.

It is further ordered that the costs of these proceedings be paid by the County of Montour.