Lawrence Newmark, J.
Defendant is charged with failure to provide proper sustenance to a horse in violation of section 353 of the Agriculture and Markets Law of the State of New York.
The People contend that the conduct of the defendant constituting the instant violation consisted of his failure to provide proper food for the horse at a time when the animal was in his custody and care. The effect of the defendant’s alleged neglect was such as to cause the animal’s physical condition to decline to the point where it was suffering from malnutrition and was in an advanced stage of emaciation. The facts concerning the animal’s condition were established by testimony of a veterinarian summoned to attend to the animal after it had collapsed in the roadway.
The animal was fed hay during the period it was in the defendant’s custody. Defendant at the time realized or suspected that the diet was deficient in that it did not provide for grain. Defendant testified to this fact on trial alleging that he advised, the owner concerning the animal’s need for grain and heavier blan *295 keting but continued to provide only hay, with minor exceptions, because those were the instructions of the owner and what he was being paid was insufficient to provide grain.
The People contend that there are three issues presented herein for the court’s consideration.
(1) Whether omissions and neglect are punishable under the statute as are acts of active cruelty.
(2) Whether a culpable state of mind is necessary for a conviction, and if so, whether such a state of mind has been established in this case.
(3) Whether a defendant having care and custody of an animal violates the statute by not providing ¡sustenance even though the owners have failed to advance moneys and equipment requested by the defendant for support.
The first paragraph of the instant section provides in part that a person who neglects or refuses to furnish an animal with sustenance or drink or causes or permits any animal to be .deprived of necessary food or drink, is guilty of a misdemeanor whether the animal belongs to himself or to another.
All of the issues framed by the People are resolved in the affirmative for reasons which will be shown.
The first of these is readily disposed of by the very language of the statute as underlined above. The sense of the statutory wording is also dispositive of the third issue. The words impose criminal liability upon a person (without qualification as to his relationship to the animal) whose refusal or neglect to furnish an animal with proper sustenance causes unjustifiable injury to any animal. Though there is little, if any, binding authority on the precise point, there is no disputing the fundamental wisdom of the holding of the Pennsylvania Court that stated,1 ‘ since dumb animals cannot be allowed to suffer and starve while human beings squabble over the rights and duties incident to the ownership and dominion which they claim over them * * * that defendant’s acts were rash, inexcusable, inconsiderate, and cruel.” (82 ALR 2d 848, citing Commonwealth v. Devenney, 103 Pa. Super. 83.) In the cited case, defendant purchased a horse at a fair. Believing the animal to be unsound, she returned it to the fair grounds, leaving it in a stall where it had been kept prior to purchase. The fair grounds were nearly deserted by then and the vendor was no longer in possession of the stall. Defendant made no provision for the horse other than to instruct a boy present at the time to give her message to another boy to care for the horse until the vendor returned. Neither boy was employed by either the vendor or the defend *296 ant. The court ¡said that even though the defendant felt the vendor would weaken in his resolve, it was nevertheless the duty of the defendant to find out whether the animal was being cared for.
The second issue centers upon the construction of section 353. There are no words contained therein requiring a “ culpable mental state ’ ’ such as intent, knowledge, recklessness or criminal negligence. Ordinarily such an offense should be deemed to be one of strict liability. But offenses of strict liability are frowned upon and a crime is to be construed wherever possible as one of mental culpability. (Penal Law, § 15.15, subd. 2) “A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. ’ ’ As stated in the practice commentary to section 15.00 of the Penal Law, “ Even though a penal statute does not expressly mention any culpable mental state, the offense will be deemed to require such if one is necessarily involved in the proscribed conduct ”. (McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 15.00.)
Have the People established the presence of a culpable mental state of mind? I think so. In referring to State v. Hirsch, (260 S. W. 557) it is reported in 82 ALB 2d 846, 847 that: “ there was substantial evidence to support a conviction under the cruelty to animals statute for an unlawful failure to supply two horses and a number of ponies with sufficient food to prevent them from starving * * * where there was testimony that the animals were found in a starving condition and were poor and skinny, and had rough hair, and some were ¡so thin that ribs and bones showed * * * Bejecting defendant’s contention that malice and intent should be shown, the court said that the statute provided that if the act was wrongfully, intentionally, and willfully done, it might be inferred that it was done maliciously and, although it' is the law that to render an act criminal a wrongful intent must exist, where a wrongful act is committed under such circumstances as were shown here, it might be inferred also that such acts were intentionally committed.” (Emphasis supplied.)
Defendant was charged with the care and custody of the horse. He testified that he knew the diet supplied was inadequate but failed to provide more, or return the horse. Although by following the complainant bailor’s instructions, the defendant may avoid civil liability for resultant injury to the property ¡so bailed (Mortimer v. Otto, 206 N. Y. 89) the instant statute is designed solely for the protection of animals and the defendant should *297 not be permitted to assert the same defense in abnegation of his duty in this criminal action.
The defendant is found guilty as charged after trial and the matter is set down for sentencing on November 2,1973.